T. P. RICHARDSON, COMPLAINANT, APPELLANT, *v.* J. I.
REESE, COMMISSIONER, DEFENDANT, APPELLEE.

(*Nashville,* December Term, 1932.)

Opinion filed March 18, 1933.

W. Raymond Denny and Wm. S. Noble, for complainant, appellant.

W. H. Eagle, Assistant Attorney-General, and Cornelius & McKinney, for defendant, appellee.

MR. JUSTICE MCKINNEY delivered the opinion of the Court.

By the bill complainant asks that defendant, Commissioner of Insurance, be enjoined from revoking his license as a solicitor of insurance in Tennessee. Complainant assails the validity of chapter 46, Acts of 1925, by virtue of which defendant was proceeding, upon the ground that it delegated to defendant certain legislative and judicial powers.

The chancellor held the Act valid, and decreed that the Commissioner would have the right to revoke the license issued to complainant upon it being made to appear, pursuant to a hearing after notice, that complainant is unfit or of bad moral character. Said Act is as follows:

"An Act to regulate the issuance and revocation of license to persons to act as Insurance Agents and Solicitors in the State of Tennessee.

"SECTION 1. *Be it enacted by the General Assembly of the State of Tennessee,* That the Commissioner of Insurance and Banking of the State of Tennessee is hereby given the power, upon application to him by any insurance company, association, fraternal benefit society or other insurance organization, or agent or general agent, to license any person or persons to transact the business of an insurance agent or agents or solicitor or solicitors; but no rules or regulations prescribed by the Commissioner shall make the licensing of applicants dependent in any manner on the recommendation of other Insurance Agents, or Associations of Insurance Agents.

"That before issuing such license, the said Commissioner shall have the power to require a specific reasonable information with respect to the moral character and

fitness of all such persons, and that he may prescribe reasonable rules and regulations for the acquisition of such information as he may reasonably deem necessary in determining the fitness of all persons desiring to become such agents or solicitors. That every insurance company, including fraternal benefit associations, and all other companies licensed to do business in this State, shall obtain from the said Commissioner of Insurance and Banking a certificate of authority for every agent or solicitor writing or soliciting insurance for them as now provided in this State, and that such certificate shall be renewable in January of each year, and that the same may be revoked after a hearing for good cause shown by said Commissioner of Insurance and Banking. That this Act shall not apply to any executive or traveling salaried employe of any Insurance Company, Association or any other insurance organization.

"SECTION 2. *Be it further enacted,* That this Act take effect from and after its passage, the public welfare requiring it."

This Act was before this court upon another question in *Independent Life Ins. Co.* v. *Rodgers,* 165 Tenn., 447, 454-455, where it was said:

"It will be seen that this Act regulates the issuance and renewal of license or certificates of authority for agents and solicitors and then provides 'that the same may be revoked after a hearing for good cause shown by said Commissioner of Insurance and Banking.'

"The Commissioner is thus given full jurisdiction in the premises. He is authorized to revoke upon 'good cause shown.' The inquiry is limited to the cause shown or charge made and a test of pertinency afforded. An actor, a party complainant or prosecutor, is involved in the showing of good cause. A 'hearing' is provided. A

hearing involves an opposite party, a defendant. The hearing provided is a legal hearing and notice to the defendant is necessarily implied. The Act has been so construed and administered by the Commissioner. A hearing without notice would be without due process of law since we think the right of an insurance agent to pursue his avocation is a property right like the right of a physician to pursue his profession. *State Board of Medical Examiners* v. *Friedman,* 150 Tenn., 152.

"It seems to us that the Act of 1925, with respect to the revocation of an insurance agent's license, clothes the Insurance Commissioner with attributes similar to those of a court and makes of him a court to determine this matter of revocation."

With respect to the design and wisdom of the Act, the court said further:

"Chapter 46 of the Acts of 1925 having conferred upon the Insurance Commissioner, with respect to the matter of the revocation of an insurance agent's license, attributes similar to those of a court, we are of opinion that policy requires that immunity be accorded to the statements of parties to and witnesses in an investigation of this sort conducted by the Commissioner. Agents handling industrial insurance particularly deal with people that are poor and generally with people that are ignorant. Such persons are frequently unable to read policies issued to them and are commonly unable to understand the provisions of the policies, albeit such provisions are binding upon them. Many painful cases come before the courts where such people have given up their scanty earnings without profit to themselves or to their beneficiaries because of unauthorized misrepresentations by unscrupulous agents as to the terms and effect of insurance contracts

such agents were writing. The interest of the people as a whole, more especially the interest of the poor and ignorant, requires a supervision of agents authorized to solicit and write life insurance. Only men of good character should be permitted to pursue such a calling and dishonest and unreliable men should be debarred from such a calling.

"The Insurance Commissioner should have every facility for informing himself as to insurance agents. The insurance companies and others interested should be encouraged to bring to the attention of the Insurance Commissioner the derelictions of such agents."

The theory of the complainant is that the Act is arbitary and capricious, in that it authorizes the Commissioner to revoke a license for "good cause shown" without undertaking to define what constitutes "good cause." The Act is not subject to this criticism. Considering it as a whole, it is manifest that it contemplates a case where it is made to appear that the licensee is unfit to pursue that vocation or is a person of bad moral character. In such circumstances, for the protection of the public, his license should be revoked.

In *State ex rel.* v. *Evans,* 122 Tenn., 184, 192, the court sustained the validity of an act which provided that "said county superintendent shall be a person of literary and scientific attainments, and of skill in the theory and practice of teaching," and that "each applicant shall file with the chairman of the county court a certificate of qualification given by the State board of education." It was insisted that by this act the legislature delegated to the Board of Education an arbitrary power to say who was eligible and who was not. This court held against this contention, and said: "The legislature itself prescribed the necessary qualifications, and the boards cre-

ated and referred to simply determined whether given persons came within those requirments, or were possessed of those qualifications. It was impracticable for the legislature itself to lay down, with precision, the degree of efficiency in literature and science that the county superintendents should possess. In the nature of things, this must be left somewhat indeterminate, and it was highly proper that the ascertainment of the exact degree of learning necessary to carry out the purpose of the act should be left for the action of competent boards.'' Citing numerous authorities.

Under the title ''Constitutional Law,'' the general rule is thus stated in 12 Corpus Juris, 840-841: ''While, however, the legislature may not delegate the exercise of its discretion as to what the law shall be, it may confer discretion in the administration of the law. Also, the legislature has power, when enacting a statute creating a new right with its remedy, to vest in some board or person power to adjudicate all matters arising under the statute, and to make such adjudication final and conclusive. The difficulty lies, not in determining the governing principle, but in its application to concrete cases. With the growing complexity of modern life, the multiplication of the subjects of governmental regulation, and the increased difficulty of administering the laws, there is a constantly growing tendency toward the delegation of greater powers by the legislature, and toward the approval of the practice by the courts.''

This court is in accord with the rule just stated, and has pointed out in numerous decisions that while the legislature cannot delegate its power to make a law, it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend. *Leeper* v. *State,*

103 Tenn., 500; *Samuelson* v. *State,* 116 Tenn., 470; *Carothers* v. *Giles County,* 162 Tenn., 494.

Under the title "Licenses," we quote from 37 Corpus Juris as follows:

Sec. 59. "An act or ordinance imposing license taxes upon occupations or business enterprises is not in violation of the constitutional guaranty against taking property without due process of law, except where the basis upon which the taxes are imposed is arbitrary and unreasonable. The fact that the granting of such licenses may be committed to administrative officers, who, within certain limitations prescribed by law, may be authorized to exercise their discretion in the granting or refusing of licenses to particular persons or corporations, does not violate such guaranty."

Sec. 97. "The power vested in the board or officer to grant licenses upon the applicant complying with the prescribed conditions, unless mandatory in terms, carries with it, either expressly or impliedly, the power of exercising, within the limits prescribed by the act or ordinance, a reasonable discretion in granting or refusing licenses. But this discretion must be exercised reasonably and not arbitrarily, and furthermore arbitrary power in this respect ordinarily cannot be conferred on such board or officer. In exercising this discretion the board or officers should consider all the circumstances against, as well as in favor of, granting the license, and act in accordance with what they believe to be in the interest of the public safety or public welfare, and if for good reasons they are satisfied that the license ought not to be granted, they are justified in refusing it."

Sec. 109. "It is generally held or provided under the various license acts and ordinances, or expressly stipulated in the license itself, that a license may be revoked

for due cause at any time by the licensing authorities; and, since a license is a mere privilege, and neither a contract nor a property or vested right, a statute or ordinance authorizing or providing for its revocation does not violate constitutional provisions, as depriving the licensee of property, immunity, or a privilege. Such revocation is generally within the discretionary powers of the revoking authorities; but it cannot be exercised arbitrarily without cause, unless authority to do so is expressly given by statute, and if, in the absence of such authority, the discretion of the licensing authorities in revoking a license is exercised with manifest injustice, the courts may interfere.''

Upon these elemental principles, fully incorporated into the jurisprudence of this State, it is only necessary to cite a few of the many cases bearing upon the question here involved, wherein it was held that the delegation of power was not illegal: *William* v. *Dental Examiners*, 93 Tenn., 619, creating a board of dental examiners to issue or revoke license to practice that profession; *Leeper* v. *State*, 103 Tenn., 500, creating a committee to select textbooks to be used in the public schools of the State; *Insurance Co.* v. *Craig*, 106 Tenn., 621, authorizing the insurance commissioner to issue and revoke certificates of authority to conduct an insurance business in this State; *Woods* v. *State*, 130 Tenn., 100, creating a board to parol prisoners; *State Board of Medical Examiners* v. *Friedman*, 150 Tenn., 152, creating a board of medical examiners with authority to revoke the license of one who has been convicted of any offense ''involving moral turpitude;'' *State ex rel. Melton* v. *Nolan*, 161 Tenn., 293, creating a board to license barbers and revoke same, among other causes, for ''gross incompetency,'' or ''immoral or unprofessional conduct;'' and

*Carothers* v. *Giles County,* 162 Tenn., 492, authorizing the county court to fix the compensation of the county trustee for special services.

The quotation hereinabove from *State ex rel.* v. *Evans,* is applicable in the present case. The legislature provided that the insurance agent must be fit and of good moral character, but left it to the Insurance Commissioner to say whether given persons possessed those qualifications. It was just as impractical in this cause for the legislature to lay down, with precision, a definition of ''fitness'' or ''good moral character'' as it was in the Evans case for the legislature to define ''literary and scientific attainments,'' or in the barbers' case to define ''gross incompetency,'' or ''immoral or unprofessional conduct.''

As heretofore indicated, before the Commissioner can revoke the license of an agent he is required to notify him of the charge which has been preferred against him, and give him a reasonable opportunity to make his defense. If the Commissioner in revoking his license acts arbitrarily, fraudulently, or illegally, the agent is afforded an adequate remedy by sections 9008-9018 of the Code of 1932. The question here involved is so thoroughly settled by previous decisions of this court that we find it unnecessary to comment upon decisions in other jurisdictions.

There is no error in the decree of the chancellor, and it will be affirmed.