SOUTHEASTERN GREYHOUND LINES *et al. v.* CITY OF KNOX-
VILLE.

(*Knoxville*, September Term, 1944.)

Opinion filed December 2, 1944.

FOWLER & FOWLER, of Knoxville, and WALKER & HOOKER, of Nashville, for complainants.

JAMES P. BROWN, BEN WINICK, and JOEL H. ANDERSON, all of Knoxville, for defendant.

MR. JUSTICE NEIL delivered the opinion of the Court.

The complainants filed their original bill in the Chancery Court of Knox County against the City of Knoxville, seeking a decree of the Court invalidating an ordinance of the City which imposed a tax upon each of complainants in the amount of $15 for every bus owned and operated by them upon any street within the corporate limits of Knoxville during the year. The ordinance which complainants alleged to be invalid provides for the collection

624

of the following amounts, the same being characterized as an "annual fee":

"Motor trucks, trailers semi-trailers, and buses, from 8,000 lbs. up to and including 18,000 lbs. gross capacity,                                                    $10.00

"Motor trucks, trailers, semi-trailers, and buses, from 18,000 lbs. up to and including 30,000 lbs. gross capacity,                                                 $15.00"

Section 3 of the ordinance provides that the ordinance shall not apply "to any truck, trailer, or bus that goes through the City as through traffic and not using a terminal or making delivery." Section 5 provides that all revenues resulting from the sale of registration or license tags shall be placed in a special fund and shall be used solely for the construction and/or maintenance of public streets and thoroughfares within the City of Knoxville.

Each of complainants is a foreign corporation and is engaged in business as a common carrier in interstate commerce. The complainants further averred that the City of Knoxville was wholly without any legislative authority to enact the aforesaid ordinance; that the provision of the City Charter conferring authority upon the City "to license, tax, and regulate all occupations which are now or hereafter may be declared to be privileged occupations by the laws of the State" was invalidated insofar as it conferred authority upon the City of Knoxville to levy a tax upon motor-propelled vehicles, by certain acts of the General Assembly which were passed subsequent to the date of the charter of Knoxville, which acts are (1) Chapter 108 of the Public Acts for the year 1937, and (2) Chapter 18 of the Third Extraordinary Session of the General Assembly for the year 1937. It is further averred that "the effect of the ordinance is to impose a burden upon complainants in the conducting

of their interstate commerce, in violation of Article 1, Section 8, of the Constitution of the United States.'' Other averments are made in the bill which are apparently argumentative and need not be mentioned.

The defendant demurred to the bill upon the ground (1) that "it has the authority and power as a municipal corporation to levy the tax complained of, and (2) that the law forbids injunctions against the collection of municipal taxes."

The Chancellor sustained the demurrer and complainants have appealed to this Court and assigned the following errors: (1) the Chancellor erred in sustaining the demurrer filed by the defendant City of Knoxville and in thus holding that the ordinance, Number 1209, was valid. It is contended the learned Chancellor should have held the ordinance invalid for the following reasons: (a) the City of Knoxville had no inherent power to pass said ordinance, and that the provisions of the charter upon which defendant relies are void; (b) the said provision of the charter was violative of Article 11, Section 8, of the Constitution of Tennessee, in that it undertook to grant to the City of Knoxville a right or privilege which was unavailable to any other municipality in Tennessee; (c) the charter provision had been rendered void by Chapter 108, art. 2, Section 2, of the Acts of the Legislature for the year 1937, and Chapter 18 of the Third Extraordinary Session of 1937; (d) the charter provision undertakes to authorize the taxing for revenue purposes of motor vehicles carrying interstate commerce, in violation of Article 1, Section 8, of the Constitution of the United States; (e) that the scheme of legislation adopted by the State, with respect to the construction and maintenance of highways and taxing motor vehicles for this purpose, requires that all taxes such as defendant seeks

to collect from complainants shall be paid to the State of Tennessee, and that such taxes when paid and collected be apportioned among the various municipalities throughout the state. (2) That the Chancellor erred in sustaining the second ground of the demurrer, thereby holding in effect that the complainants were not authorized to maintain a bill to enjoin the collection of municipal taxes, etc.

There can be no doubt the Legislature, in order to prevent utter chaos and confusion in levying taxes upon motor vehicles, as well as in their regulation, has adopted a scheme or a policy that is reasonable and fair to all classes of motor vehicles, to the public, and also the various municipalities of the State. The State must maintain a vast system of public roads and highways. The various municipalities of the State must keep and maintain their streets in reasonable repair for the benefit of the traveling public. The operator of a motor vehicle cannot be restricted to the use of any particular road. He travels everywhere. The citizens of the various municipalities of the State travel upon all highways as well as the streets of every city. These users of our streets and highways must pay the cost of their construction and maintenance. The Legislature has accordingly passed a general law providing for the collection of all revenue derived from the sale of gasoline, oil, licenses, etc., for that purpose, a portion being allocated to the various counties and cities of the State. Code, sections 3177, 3179, 3242; *Collier* v. *Baker*, 160 Tenn. 571, 27 S. W. (2d) 1085. That the Legislature clearly withdrew from all municipalities the right to assess a privilege tax upon motor vehicles cannot be seriously questioned. The right, which the defendant under its charter seeks to exercise, is vested solely in the State of

Tennessee. On November 19, 1937, the General Assembly of the State, at its Third Extraordinary Session, enacted the following statute (ch. 18, Pub. Acts 1937, 3rd Extra Sess.):

"Section 1. Be it enacted by the General Assembly of the State of Tennessee, That the licensing as a privilege of the driving of any motor driven vehicle upon the roads, streets or other highways of the State of Tennessee is hereby declared *an exclusive State privilege and no tax for such privilege under any guise or shape shall hereafter be assessed, levied or collected by any municipality of the State of Tennessee.*

"Sec. 2. Be it further enacted, That all ordinances, rules or regulations heretofore passed, enacted or promulgated by the Legislature *or governing bodies of any incorporated municipality of the State of Tennessee, in conflict with the provisions of this Act are hereby declared inoperative and of no effect, from and after the passage of this Act.*

"Provided nothing herein shall prohibit municipalities to maintain and operate safety lanes, inspection bureau or stations, nor to abridge their right to require City Automobile tags." (Italics ours.)

■■ Conceding that the provision of the Charter of the City of Knoxville invoked by the defendant in the instant case authorized the assessment upon the complainants' buses and trucks, we think the foregoing statute rendered such ordinance void from and after its passage. The act did not undertake to restrict the right of any municipality to regulate traffic by requiring inspections of automobiles and license tags. In the absence of such a *proviso* as found in the foregoing act, a municipality might impose such regulations under its general

charter powers. But no municipality may enact ordinances for the collection of privilege taxes upon a business or occupation under its general police powers. We must look to the purpose of the ordinance rather than the name of the tax sought to be imposed by the municipality. Authorities need not be cited to sustain this contention. While the ordinance in question (Section 5) speaks of the tax sought to be collected as an "annual fee", it is clearly one for the raising of revenue as distinguished from the collection of a "fee" as a means of regulating motor vehicles. The ordinance expressly provides, "that all revenues resulting from the sale of the above described registration or license tags shall be placed in a special fund and *shall be used solely for the construction and maintenance of public streets or thoroughfares within the City of Knoxville, Tennessee.*" (Italics ours.) We think the ordinance is invalid as being in contravention of Article 11, Section 8, of the State Constitution, since it is in contravention of the general law of the State relating to the assessment and collection of revenue from a specified class, to-wit, owners and operators of motor vehicles.

The argument advanced by counsel for defendant, that "the criticism which complainants now make . . . could be leveled at any provision in a city charter not contained in every charter in the State," is unsound. Counsel refer the Court to special acts authorizing bond issues, government of schools, redistricting counties, etc. But we are here dealing with a special ordinance to raise revenue from a special class. In *Clark* v. *Vaughn*, 177 Tenn. 76, 78, 146 S. W. (2d) 351, Justice CHAMBLISS, speaking for the Court, said:

"While the Legislature may constitutionally enact special laws affecting a municipality of the State, usually

by amendment to its charter, this cannot be done with respect to matters which are governed by general laws applicable to the entire State and all counties and municipalities therein alike. The distinction running through our authorities appears to be that these special charter provisions may be lawfully enacted only as to such matters and in such particulars as have not been made the subject of uniform State-wide legislation.''

Reference has been made to the *Redistricting Cases*, 111 Tenn. 234, 80 S. W. 750, as authority for their contention. In this case the Court was dealing with political subdivisions of the state, counties, and cities, as governmental agencies contra-distinguished from the regulation of the affairs of the citizens themselves. The case is inapplicable to the legal question now before us.

Contention is further made by complainants that, as a result of the privilege tax imposed by the ordinance, they are ''doubly taxed'', in violation of Article II, Section 28, of the Constitution, the State of Tennessee having imposed the tax upon them of $11 for each seat ''as reasonable compensation for the use of the public highways.'' Chapter 108, Public Acts of 1937. We find it unnecessary to pass upon the foregoing contention, as well as the assignment of error that the ordinance violates the commerce clause of the United States Constitution, for the reason that the General Assembly of the State has expressly withdrawn from all municipalities in this state the right to impose a privilege tax upon motor vehicles. The said ordinance being invalid upon that ground, it becomes unnecessary to advance other reasons for its invalidity.

Counsel for defendants earnestly urge upon us the insistence that the right of the City of Knoxville to impose the tax upon interstate carriers has been expressly

decided in favor of the City in the case of *DeLay* v. *City of Chattanooga*, 180 Tenn. 316, 174 S. W. (2d) 929. We think that case is easily distinguished from the one now before us. While counsel for DeLay raised the question that the license fee of five dollars was invalid for lack of legislative authority of the City to enact it, the Court largely rested its decision upon the theory that it was a regulatory tax and enforceable under the police power of the City, citing *McKelley* v. *City of Murfreesboro,* 162 Tenn. 304, 36 S. W. (2d) 99; *Rutherford* v. *City of Nashville,* 168 Tenn. 499, 79 S. W. (2d) 581; *Fox* v. *Mayor & Aldermen of Morristown,* 180 Tenn. 256, 174 S. W. (2d) 297; and *Marshall* v. *State,* 180 Tenn. 9, 171 S. W. (2d) 269.'

In the *McKelley Case* the Court was dealing with the validity of a zoning ordinance and held that such ordinances may be enacted under a grant of authority "for the protection of life, health and property." [162 Tenn. 304, 36 S. W. (2d) 101.] In the *Rutherford Case* the ordinance assailed imposed a biennial license fee of fifty cents as cost of an examination of the operator of a vehicle, as to his fitness, etc., and held it to be valid under the City's police power. In the case of *Fox* v. *Mayor & Aldermen of Morristown, supra,* the ordinance involved levied a tax of two dollars upon persons living beyond the city limits and was enacted under a charter provision "to license, tax and regulate automobiles." The only question made on appeal was that the ordinance was invalid as "class legislation." In the case of *Marshall* v. *State, supra,* the defendant, a resident of Kentucky, was doing business in Tennessee. He was convicted of violating a state statute requiring a non-resident to register his automobile when a vehicle is operated in the state for a longer period than thirty days. The citation of the

foregoing cases in the *DeLay Case* clearly shows that the Court considered the city ordinance of Chattanooga a regulatory measure.

We are not unmindful of the weight of authority to the effect that "a state may impose, even on motor vehicles engaged exclusively in interstate commerce, a reasonable charge as their fair contribution to the cost of constructing and maintaining the public highways." *Sprout* v. *South Bend*, 277 U. S. 163, 170, 48 S. Ct. 502, 504, 72 L. Ed. 833, 837, 62 A. L. R. 45, opinion by Mr. Justice BRANDEIS. Speaking further it is said: "And this power also may be delegated in part to a municipality by appropriate legislation." We find nothing in the charter of Knoxville delegating to the City any such power. On the contrary, the State has expressly reserved to itself the power to impose taxes upon motor vehicles for the purpose of constructing and maintaining public streets and highways.

■■ The second ground of the demurrer raised the question of the right of the complainants to file an original injunction bill to restrain the defendant from collecting taxes due it. It appears that the Chancellor did not pass upon this ground of the demurrer. The Charter of the City of Knoxville relating to the collection of taxes reads as follows:

"In all cases arising after the tax becomes due, the law applying to the collection of State revenue as set forth in Chap. 44 of the Acts of 1873 shall apply likewise to the collection of municipal taxes due the City of Knoxville."

Chapter 44 of the Acts of 1873, which now appears in Code, section 1790, provides:

"In all cases where not otherwise provided in which an officer, charged by law with the collection of revenue due

the state, shall institute any proceeding, or take any steps for the collection of the sum alleged or claimed to be due, by said officer, from any citizen, the person against whom the proceeding or step is taken shall, if he conceives the same to be unjust or illegal, or against any statute or clause of the constitution of the state, pay the same under protest.''

The record in the instant case shows that the bill of complainants was filed before the tax assessed against them became due, on the ground that it was a void assessment. It will be noted that the provision of the City Charter upon which reliance is had relates to cases ''arising after the tax becomes due.'' The bill prayed for an injunction on the ground that the assessment was void. In *Smoky Mountain, etc., Co.* v. *Lattimore*, 119 Tenn. 620, 621, 105 S. W. 1028, it was held that a bill would lie to enjoin the enforcement of a void assessment by the State Board of Equalization and to *enjoin the County Trustee from collecting the taxes.* See also *Southern Express Co.* v. *Patterson*, 122 Tenn. 279, 123 S. W. 353. We think under these cases the question raised has been adjudicated adversely to the defendant's contention and should be overruled. Moreover, while the bill primarily seeks injunctive relief, we think it might well be considered as a bill seeking a declaratory judgment upon the validity of an ordinance affecting complainants and other persons similarly situated.

The decree of the Chancellor is reversed and the complainants' bill sustained.

GREEN, C. J., CHAMBLISS and GAILOR, JJ., and WEBB, Special Judge, concur.