LARGE *v.* CITY OF ELIZABETHTON *et al.*

(*Knoxville*, September Term, 1946.)

Opinion filed July 21, 1947.

Guinn & Mitchell, of Johnson City, for appellant.

Roy C. Nelson, and Raymond C. Campbell, both of Elizabethton, for the City.

Mr. Justice Tomlinson delivered the opinion of the Court.

By Private Chapter No. 8, House Bill No. 6 enacted by our General Assembly in 1947, it is proposed to amend the charter of the City of Elizabethton. This charter is Chapter 437 of the Private Acts of 1937. The amendatory act provides for the regulation of the taxicab business in that city. The appellant, who is affected thereby, filed his bill in equity under the Declaratory Judgment Law, Code 1932, sec. 8835 *et seq.*, and in that bill challenged the constitutionality of the act, and sought to enjoin its enforcement. The Chancellor in an excellent opinion held the act constitutional, with the exception of certain sections which were elided by reason of the severable provision of the act. Complainant, a taxicab

operator, has appealed and makes the same insistences here.

By his first assignment of error, it is insisted that the amendatory act of 1947 violates Article 2, Section 17 of our Constitution in that the substance of the amendatory act is not expressed either in the title of the original act or of the amendatory act. The caption of the amendatory act is ''an act to amend the charter of the City of Elizabethton—being Chapter 437 of the Private Acts of the General Assembly of the State of Tennessee for 1937 and all acts amendatory thereof''.

■■ Exactly in point is *Van Dyke* v. *Thompson,* 136 Tenn. 136, 189 S. W. 62. The caption of the amendatory act in that case was as follows: ''An act to amend the charter of the City of Chattanooga and all acts amendatory thereof.'' The Court held that this caption and the body of the act gave sufficient notice of the respect in which the charter was proposed to be amended by the act. The 1947 amendatory act, therefore, meets the constitutional requirements if the subjects of its proposed amendment is expressed in the title of the original charter act. By this amendment, the City of Elizabethton through its Board of Commissioners is vested with the power and duty of regulating the business of operating taxis for hire within the boundaries of this municipality. A detailed scheme of regulation of this business is set out in the amendatory act. This caption of the charter act recites that the body of the act will ''provide for the powers, duties and authority of said municipal corporation''. One of the powers which may be delegated to a municipality is the power ''to regulate the use of their streets by motor carriers for hire within the corporate limits''. *City of Chattanooga* v. *Jackson,* 172 Tenn. 264, 111 S. W. (2d) 1026. The caption of the charter act

is sufficiently comprehensive, therefore, to legally permit its body to contain the provisions of the 1947 amendatory act regulating the taxi business. If the purpose is fairly indicated in the caption and the provisions of the act are germane to that purpose, they are not beyond the title. *Swain* v. *Smith*, 174 Tenn. 688, at page 694, 130 S. W. (2d) 116. It results that the amendatory act does not contravene Article 2, Section 17 of our Constitution.

Assignment of Error No. VI likewise attacks the validity of the entire amendatory act. It is here insisted that the act contravenes Aricle 11, Secion 8 of the Constitution in that, so it is alleged, it suspends the general law and confers upon Elizabethton rights not enjoyed by other municipalities and imposes burdens upon those operating taxis in this town which are not imposed upon those in this business in other towns, and vests in the Board arbitrary powers. In considering this insistence, it is unnecessary to do more than state generally the provisions of the act, which contains 23 sections, some of them lengthy. Eliminating for the time being Section 9, and portions of Sections 15 and 17, which the Chancellor held unconstitutional and elided, the act requires as a condition precedent to the operation of a taxi in Elizabethton that the operator have a certificate of public convenience and necessity, and the Board is vested with the duty and discretion of determining whether the proposed service is or will be required for the public convenience and necessity and whether the applicant is fit and able to perform the service. The authority and duty to inspect taxi cabs and the business premises of persons holding certificates is required, and the Board is authorized to suspend or revoke the permit of those not complying with this law and the orders of the Board made pursuant thereto. It imposes an annual "fee" to

cover the expense of inspection and of enforcing the act. It requires public liability and property damage insurance in reasonable amounts for each taxi or a surety bond approved by the Board to assure payment of damages or for injuries to others by reason of the negligent operation of such taxis.

The general law regulating the business of the conveyance of persons by motor vehicles is Chapter 119 of the Acts of 1933, carried in Williams Code commencing at section 5501.1. By Section 2 of that act, motor vehicles used exclusively in taxi-cab service are excluded from the act. The special act now under consideration does not, therefore, suspend the general law. The holding of the *City of Chattanooga* v. *Jackson, supra,* is in point and seems to be conclusive of the question. There this Court held at page 267 of 172 Tenn., at page 1027 of 111 S. W. (2d): "The extension of regulatory power over motor vehicles throughout the state to the Public Utilities Commission conveys no implication of an intention to deprive municipalities of power to regulate the use of their streets by motor carriers for hire within the corporate limits. Both are regulatory measures, cumulative in their effect, and both may be administered for the safety and convenience of the public."

It is insisted, however, that the act vests extraordinary and arbitrary powers in the Board and is "vicious arbitrary class legislation". The legislature may confer discretion on some board in the administration of a statute which the legislature enacts, and vest in that board the "power to adjudicate all matters arising under the statute". *Richardson* v. *Reese,* 165 Tenn. 661, at page 667, 57 S. W. (2d) 797, 799. In so holding in that case the court observed: "With the growing complexity of modern life, the multiplication of the subjects

of governmental regulation, and the increased difficulty of administering the laws, there is a constantly growing tendency toward the delegation of greater powers by the legislature, and toward the approval of the practice by the courts''. Since the legislature may authorize municipalities to regulate the use of their streets by taxis for hire as held in *City of Chattanooga* v. *Jackson, supra,* it follows, of course, that it may authorize the governing body of that City, they being the Board of Commissioners, to administer this police measure and vest in it the power to adjudicate all matters arising in its administration. This act is one for the protection of the health, morals and safety of the people. It is, therefore, a governmental function. The constitutionality of such legislation, although special in its application to a particular municipality, does not come within the prohibition of Article 11, Section 8 of the Constitution, since there is no general act on the subject applicable alike to all municipalities. Further, ''one who assails a classification made in a police measure must carry the burden of showing that such classification is essentially arbitrary''. *McConnell* v. *City of Knoxville,* 172 Tenn. 190, at page 194, 110 S. W. (2d) 478, 479, 113 A. L. R. 966.

It is also insisted that the act violates Article 1, Section 8 of the Constitution in that it vests the Board with authority to revoke or suspend permits ''at will—leaving it to the caprice of the Board, providing no appeal or basis of review''. Section 14 of the Act provides for the inspection of the taxis and premises of certificate holders and may require by order, ''issued pursuant to resolution, the correction of any condition of equipment or premises which may be detrimental to public safety or welfare'' and in the event the certificate

holders fails to correct the condition the Board may suspend or revoke his certificate. Section 15 of the act forbids revocation of a permit "without reasonable notice—and after a reasonable hearing". Therefore, as pointed out by the Chancellor, any arbitrary, fraudulent or illegal action of the Board in revoking the permit may be corrected by Code sections 9008-9018. In pointing out this remedy in a case like this, it was held in *Richardson* v. *Reese*, *supra*: "If the commissioner in revoking his license acts arbitrarily, fraudulently, or illegally, the agent is afforded an adequate remedy by sections 9008-9018 of the Code of 1932".

The same insistence is made with reference to the requirement that public liability and property damage insurance be carried or approved surety bond filed as a condition precedent to the operation of a taxi. The argument made is that it deprives taxi operators in Elizabethton of the privilege of driving therein without procuring this insurance or bond, while the general law permits him to drive anywhere else without such insurance or bond. It is said that this makes it possible for the Board to discriminate against the applicants whom it does not admire by a strict enforcement of the provision, while permitting "a straw bond" without any cost to those whom it desires to favor. We must presume that the Board will do its duty. This required presumption completely refutes the insistence just stated. The legislature may prescribe conditions under which its highways may be used for gain by carriers for hire. *Johnson Freight Lines* v. *Davis*, 174 Tenn. 51, 56, 123 S. W. (2d) 820. The same power applies as to the streets of a municipality, and in the exercise of such power, indemnity inurance or surety bonds may be required to compensate for injuries to persons and damage to property

inflicted by the negligent operation of taxis. *Steil* v. *City of Chattanooga,* 177 Tenn., 670, 152 S W. (2d) 624.

Section 16 of the Act requires every person holding a certificate to pay "annually a fee of not more than $10.00 per taxi cab—such fee to cover and be applied toward the cost of inspection and otherwise enforcing and carrying out the provisions of this act". Section 17 requires that each application for a certificate be accompanied with an application fee of $25. By statute applicable generally the licensing as a privilege for driving motor vehicles upon the streets and highways is made an exclusive state privilege for which "no tax—under any guise or shape shall hereafter be assessed, levied, or collected by any municipality." Williams Code sec. 3336.4. It is contended that the requirement that every applicant for a certificate pay the fee mentioned and every person holding a certificate pay annually a fee of not more than $10 per taxi suspends this general law for the benefit of the town of Elizabethton, and, therefore, transgresses Article 11, Section 8 of the Constitution. A municipal ordinance imposing such fee was sustained in *DeLay* v. *City of Chattanooga,* 180 Tenn., 316, 174 S. W. (2d) 929. An ordinance of Knoxville levying what the ordinance called an "annual fee" on trucks, trailors, and buses using the streets of Knoxville was held invalid. *Southeastern Greyhound Lines* v. *Knoxville,* 181 Tenn., 622, 184 S. W. (2d) 4, 7. That ordinance provided that the money collected should be applied to the construction and maintenance of the streets. This disclosed that it was a revenue ordinance and as such was in contravention of the law above referred to forbidding the levying of such a tax by a city. In that case this Court, speaking through Mr. Justice NEIL, said: "We must look to the purpose of the ordinance rather than the name of the

tax sought to be imposed by the municipality". The statute now under consideration provides a rather detailed system of inspection, investigation, hearings, etc. As observed by the Chancellor, these "will without doubt involve expenses for clerical aid and other assistance". As pointed out, the annual fee is fixed at "not more than $10.00", thereby indicating that it was intended for the Board to fix this fee in accordance with the expenses of the administration of the act. The act expressly recites that this fee is to be applied to that expense. We are constrained to hold that the application fee and the annual certificate fee is not for the purpose of raising revenue, but for the purpose of defraying the expense of the administration of this act. Therefore, these provisions are valid.

The merits of other assignments of error attacking the constitutionality of the act or portions thereof have been fully covered in disposing of the above mentioned assignmnets and need not be further mentioned. There is left, therefore, for consideration the insistence that the Chancellor erred in eliding certain sections which he held unconstitutional, it being argued that the portions invalidated "are dependent upon the act as a whole". It is also contended that the Court erred in failing and refusing to pass on sections 6 and 7 of the act.

Section 9 requires all persons proposing to operate a taxicab in Elizabethton to procure a taxicab driver's license from the City and a discretion as to whether such license shall issue is vested in the Board. It forbids the issuance of such license to persons who have been convicted of crime or are not of good moral character. A portion of Section 15 authorizes the revocation of such license and a portion of Section 17 requires that an application fee of $5 and $2 annually accompany each application for renewal of such license. The Chancellor held

these provisions unconstitutional, because they contravene the Uniform Motor Vehicles Operator's and Chauffeurs Act, Code Section 2715.14 to 2715.35, inclusive, which is a complete general law on the subject.

The paramount legislative intent of the 1947 amendatory act is to regulate the taxicab business in Elizabethton. A plan covering all phases of such business in so far as the business may effect the safety of the people using the streets of the town is worked out by the act. The requirement that the operators of taxis procure a taxicab drivers license from the city and pay a small sum for it, is only one detail of this comprehensive act. This requirement is only incidental and subordinate. That which remains of the act "is complete in itself, capable of being executed in accordance with the apparent legislative intent, wholly independent of that which is rejected." The vitality of the act remains, therefore, and it is valid. *Corporation of Sevierville* v. *King,* 182 Tenn. 143,, 184 S. W. (2d) 381. While this is sufficient, yet it may be observed that even this incidental and subordinate detail is practically accomplished by the general law providing for a Taxi Chauffeur's license.

Section 6 of the Act provides that "with the exception of those already in business at the time of the passage of the act, the Board shall issue no certificate unless it determines after a hearing on notice that additional service is needed. In this event existing operators are given a reasonable time to provide such service. Section 7 provides that no operator without the approval of the Board charge rates in excess of those now in effect. Complainant was in the business at the time of the passage of the act, and is not, therefore, affected by Section 6. Since the rates being charged by complainant are not in excess of those fixed by Section 7, he is not at this time

affected by that section. The Chancellor correctly held that he may not, therefore, raise the question of the validity of these sections. The declaratory judgment statute does not contemplate a declaration under such conditions, as insisted on this appeal. *U. S. Fidelity & Guaranty Co.* v. *Askew,* 183 Tenn., 209, 191 S. W. (2d) 533, and cases there cited.

 This disposes of all assignments of error directed to the decree of the Chancellor with reference to the amendatory act, Chapter 8, Private Acts of 1947. (House Bill No. 6.) Prior to its passage Elizabethton enacted ordinance No. 341 to accomplish the same purpose as that subsequently accomplished by the enactment of the amendatory act. Therefore, the Chancellor correctly held that it was unnecessary to pass upon appellant's attack upon that ordinance. The assignment of error as to this is overruled; as is the assignment directed to the fact that costs below were taxed against complainant. That was no abuse of the discretion vested in the Chancellor.

Decree affirmed, with costs of appeal adjudged against appellant and his sureties.

All concur.