Edward M. O’Gorman, J.
The City of Newburgh has adopted certain ordinances (Code of Ordinances of City of Newburgh, §§ 23-14 to 23-47) regulating the taxi business within the City of Newburgh. One of these regulations is a regulation prescribing the amounts of public liability insurance coverage which each taxi licensee must maintain in force during the license period. The regulation, section 23-27, provides as follows: “No vehicle shall be licensed unless it is a four-door metal top sedan and is insured by a public liability policy for damages for death or injuries to persons in the amount of one hundred thousand dollars ($100,000.00) and for damages arising out of any one accident at least three hundred thousand dollars ($300,000.00). The chief of police shall refuse a license to, or, if already issued, shall revoke or suspend a license if the vehicle is unsuitable for public patronage. ’ ’
The plaintiff contends that the aforesaid section 23-27 is unconstitutional. The legal issues presented by the complaint and the answer herein have been submitted to the court for final determination, there being no factual issues raised by the parties.
*890 In order to sustain the validity of this city -ordinance, it should be established (1) that it was adopted in an area of city government in which the city was competent to legislate, (2) that the regulation is not one which is expressly prohibited by the State Legislature, (3) that the regulation is not on a subject on which the right to legislate has been pre-empted by the State of New York, and (4) that the regulation was designed to accomplish a legitimate objective of the city, was not discriminatory, and was otherwise reasonable.
The city’s right to regulate franchises to operate taxicabs on the city streets is granted to the city by the provision of section 181 of the General Municipal Law. (See, also, former section 288 of the Highway Law, added by chapter 374 of the Laws of 1910, as amended by chapter 317 of the Laws of 1925; Yellow Taxicab Co. v. Gaynor, 82 Misc. 94, 110, affd. 159 App. Div. 893.)
It is necessary next to consider whether a regulation by a city requiring public liability insurance coverage, as a condition to granting a franchise to -operate taxis within its limits, in excess of the coverage set forth in section 370 of the Vehicle and Traffic Law, is expressly prohibited by any State legislation. Section 370 provides in part as follows:
“ Every person * * * or corporation engaged in the business of carrying * * * passengers for hire in any motor vehicle * * * which shall be operated over, upon or along any public street or highway of the state of New York shall file with the commissioner of motor vehicles for each motor vehicle * * * intended to be so operated, either a personal bond * * * or a policy of insurance * * * conditioned for the payment of a minimum sum, hereinafter called minimum liability, on a judgment * * * for damages * * * and subject to such minimum liability a maximum sum, hereinafter called maximum liability on a judgment * * * because of bodily injury to, or death * * * in any one accident and for the payment of a maximum sum, called maximum liability on all judgments for damages because of injury to or destruction of property of others in any one accident * * * as follows:
“ (a) For damages for and incident to death or injuries to persons * * * for each motor vehicle having a seating capacity of not more than seven passengers, a bond or insurance policy with a minimum liability of ten thousand dollars and a maximum liability of twenty thousand dollars * * *
“ (b) For damages for and incident to injury to or destruction of property; for each motor vehicle * * * a bond or insurance policy with a maximum liability of five thousand dollars. ’ ’
*891 In view of the fact that many taxicabs licensed by the State Department of Motor Vehicles are insured for greater amounts of public liability insurance than that set forth in section 370 of the Vehicle and Traffic Law, it cannot reasonably be argued that it was the intention of that section to make uniform the public liability insurance coverage of all taxicabs throughout the State. It is reasonable to conclude, therefore, that the intention of the State Legislature in enacting the provisions of section 370 was to establish a minimum public liability insurance coverage for taxicabs which would be a uniform minimum throughout the State, and to the extent that this minimum has been established, to that extent it may be said that the cities are expressly prohibited from adopting any regulations which would permit less than the State-established minimum public liability coverage for taxicabs.
To say this, however, is not to say that section 370 expressly forbids the enactment of any local legislation requiring greater public liability insurance coverage than the minimum established by the State. Section 1640, which is also relied on by plaintiff, deals with the powers of local municipalities to regulate traffic, and has no application to the question presented in this case.
If this ordinance is in fact illegal, it must be because the right to enact legislation in this field has been pre-empted by the State Legislature. In this connection, the parties have been unable to call the court’s attention to any decision of a court of this State passing upon the question which is here presented. The plaintiff does call to the court’s attention the provisions of section 1600 of the Vehicle and Traffic Law, pertinent portions of which provide as follows: “ The provisions of this chapter shall be applicable and uniform throughout this state and in all political subdivisions and municipalities therein and no local authority shall enact or enforce any local law, ordinance, order, rule or regulation in conflict with the provisions of this chapter unless expressly authorized herein.”
This section sets up alternative legislative criteria for determining whether or not the particular local ordinance which undertakes to regulate in some respect the use of a motor vehicle deals with a subject on which the State Legislature has reserved to itself the sole right to regulate. These criteria are either that the municipal ordinance must not be in conflict with the provisions of the Vehicle and Traffic Law or, if it is in conflict, its enactment must have been expressly authorized by the terms of the Vehicle and Traffic Law itself.
In my opinion, the present ordinance meets both criteria set up by the Legislature. In my view, the requirement that a *892 taxicab be covered by public liability insurance the minimum limits of which are higher than those required by the State as set forth in section 370 of the Vehicle and Traffic Law, cannot logically be said to be in conflict with the general law. A taxi covered by an increased amount of public liability insurance does not violate the minimum standard set by the State, and nowhere in the Vehicle and Traffic Law is there any express prohibition against increased amounts of public liability insurance for taxicabs, nor is there expressed anywhere in that law any State policy permitting those engaged in the taxi business from protecting their assets by acquiring increased amounts of public liability insurance.
The purpose underlying the broad general revision of the Vehicle and Traffic Law in the form in which we now have it was stated in People v. President & Trustees of Vil. of Ossining (238 App. Div. 684, 687): The purpose of the statute was to repeal existing ordinances in conflict therewith, and to prevent the existence of two sets of enactments, under either of which there could be prosecution for violation of the provisions thereof.
An example of the havoc which would result from having different local and State rules governing certain aspects of' the operation of motor vehicles on the highways has been given by the court in People v. City of Buffalo (152 Misc. 375, 378). In the language of the opinion, “ Would the Legislature intend that such a city could enact an independent Motor Vehicle Law in conflict with the State law in the matter of lights, brakes, muffler cut-out, number plates and reckless driving? It is apparent that the intent of the Legislature by the enactment of the provisions of the Highway Law relating to motor vehicles, and thereafter the Vehicle and Traffic Law, was to create uniform regulations that would be state-wide.”
However, there is no similar danger to be apprehended as a result of the fact that the City of Rochester might have different insurance regulations pertaining to Rochester taxicabs than the City of Newburgh might have pertaining to Newburgh taxicabs. The regulation of public liability insurance for taxicabs has no tendency to undermine the broad policy of the Vehicle and Traffic Law that uniformity should prevail throughout the State. Nothing contained in section 23-27 will prevent the plaintiff from operating his taxicab in any other area of the State of New York, provided he obtains the minimum insurance protection required by the State of New York. It is only when he seeks the privilege of a franchise in one or more of the municipalities of the State that he will be required to provide such additional coverage, if !any, as that municipality may require. j
*893 However, statutory enactments contained in the Vehicle and Traffic Law itself make clear that, in the area of regulating taxi franchises, the Legislature expressly intended to confer on municipalities the right to set reasonable conditions on the operation of those franchises. Section 1600 provides in the last sentence as follows: “No local authority shall enact or duplicate any provision of this chapter as a local law, ordinance, order, rule or regulation, except that any local authority authorized to supersede any provision of this chapter may enact any such provision in a modified or amended form.” (Italics supplied.)
Section 1604 of the Vehicle and Traffic Law, which provides that local authorities shall have no power to pass any ordinance which requires of an owner of a motor vehicle any tax, fee, license or permit for the use of the public highways, provides in the second paragraph thereof as follows: “Provided, however, that the power given to local 'authorities to license and regulate vehicles offered to the public for hire, and processions, assemblages or parades in the streets or public places, and all ordinances, rules and regulations which may have been or which may be enacted in pursuance of such powers shall remain in full force and effect. ’ ’
The principal source of power given to the local authorities is contained in the General Municipal Law, wherein the Legislature confers on the cities the power to adopt ordinances regulating the registration and licensing of taxicabs and the power to limit the number of taxicabs1 to be licensed (§ 181). It would seem, therefore, that so long as the application of a rule requiring certain minimum limits of public liability insurance coverage in a particular city is a reasonable exercise of a power implicit in the power to regulate taxi franchises on the city streets and is nondiscriminatory, then this particular ordinance of the City of Newburgh must be held to be valid.
In 1915, the Supreme Court of California, in Matter of Cardinal (170 Cal. 519) considered the constitutionality of a provision in the ordinances of the City of San Francisco (No. 3212 N. S., § 4), which required vehicles which transported passengers for hire to give and keep in force a bond with a responsible surety company, or a policy of insurance, in the sum of $10,000 conditioned that the owner of the vehicle will pay loss or damage which may result to any person from the negligent operation of the vehicle. The court upheld the validity of the statute, stating, among other things, that security to protect against improper or negligent operation was essential to the public safety. The *894 court went on to point out (p. 524) that the .requirement of a bond to secure faithful compliance with police regulations and the satisfaction of liabilities that may arise from their violation, or to serve as an indemnity fund for persons who have suffered by the fraudulent conduct of the business, is permissible as a subsidiary measure of police control wherever a license may be required by way of regulation (citing Freund, Police Power, § 40).
In 1947, the Supreme Court of the State of Tennessee dealt with a similar question. In Large v. City of Elizabethton (185 Tenn. 156), the appellant challenged the constitutionality of a regulation of the City of Elizabethton (Private Chapter No. 8, House Bill No. 6, 1947) regulating the operation of the taxicab business in that State. It had previously been decided that the State Legislature had the power to authorize municipalities in the State of Tennessee to regulate the use of their streets by taxis for hire (City of Chattanooga v. Jackson, 172 Tenn. 264), In Large v. City of Elizabethton (supra, pp. 164-165), the court stated the issue and its conclusion as follows: ‘ ‘ The same insistence is made with reference to the requirement that public liability and property damage insurance be carried or approved surety bond filed as a condition precedent to the operation of a taxi. The argument made is that it deprives taxi operators in Elizabethton of the privilege of driving therein without procuring this insurance or bond, while the general law permits him to drive anywhere else without such insurance or bond. It is said that this makes it possible for the Board to discriminate against applicants whom it does not admire by a strict enforcement of the provision, while permitting a ‘ straw bond ’ without any cost to those whom it desires to favor. We must presume that the Board will do its duty. This required presumption completely refutes the insistence just stated. The legislature may prescribe conditions under which its highways may be used for gain by carriers for hire. Johnson Freight Lines v. Davis, 174 Tenn. 51, 56, 123 S. W. (2d) 820. The same power applies as to the streets of a municipality, and in the exercise of such power, indemnity insurance or surety bonds may be required to compensate for injuries to persons and damage to property inflicted by the negligent operation of taxis. Steil v. City of Chattanooga, 177 Tenn., 670, 152S. W. (2d) 624.”
Based on prior experience, it is most probable that taxicabs operating within the City of Newburgh will become involved in accidents which will cause bodily injury and sometimes death *895 to passengers therein, to pedestrians on the city streets, or to the occupants of other motor vehicles. It is also most probable that the majority of these persons will be residents of the City of Newburgh. It would seem that the protection of these persons from loss due to the. possible inability of those operating taxis to respond adequately in damages for injuries caused by their negligence is a reasonable concern of the City of Newburgh (see Matter of Cardinal, 170 Cal. 519, supra, and Large v. City of Elisabethton, 185 Tenn. 156, supra).
The regulation in question is not discriminatory. In the event that certain taxi businesses operating with marginal assets may be unable to obtain a franchise if there should be any increase in the cost of their public liability insurance, such a result should not be regarded differently than any other requirement which might result in limiting the number of franchises within the city, which is expressly within the power conferred on the city by the provisions of section 181 of the General Municipal Law.
There has been no claim in this case that the cost of the increased public liability insurance limits proposed by section 23-27 of the city code places an unreasonable burden on the operator of a taxicab in the city, and there has been no claim in this case that the public liability coverage limits required by the City of Newburgh are unreasonable when applied to this applicant. For the purposes of this decision, there is no such issue before the court.
Under these circumstances, section 23-27 of the Code of Ordinances of the City of Newburgh has met all of the criteria for validity. It is entitled, moreover, to a presumption that it has been properly enacted and that it is reasonable (see City of Rochester v. Macauley-Fien Milling Co., 199 N. Y. 207, 211. See, also, Meyers v. New York State Div. of Housing, 36 A D 2d 166, 171).
In this action for a declaratory judgment, the judgment of this court is that section 23-27 of the Code of Ordinances of the City of Newburgh is not unconstitutional and is a valid enactment.