HOME INSURANCE CO. *v.* TAXING DISTRICT.

1. **CONSTITUTIONAL LAW.** *Repeal by Implication.* The Act of 1875, ch. 109, provided for the payment to the State of a prescribed tax by foreign insurance companies for the privilege of doing business in this State, " which shall be in lieu of all other taxes." By the act of 1879, ch. 84, sec. 7, sub-sec. 53, an additional tax for the benefit of the Taxing District was laid on the same business. *Held*, that the latter act was valid.

2. **SAME.** *Same.* The provision of the Constitution of 1870, Art. 2, sec. 17, that, " All acts which repeal, revive or amend former laws shall recite in their caption or otherwise the title or substance of the law repealed, revived or amended," does not apply to acts which, by their positive provisions, operate a repeal of previous acts by necessary implication.

FROM SHELBY.

Appeal from the Chancery Court at Memphis. W. W. MCDOWELL, Ch.

U. W. MILLER for Complainant.

C. W. HEISKELL for Defendant.

COOPER, J., delivered the opinion of the Court.

This is an agreed case to test the liability of foreign insurance companies doing business in the Taxing District of Shelby County to pay a privilege tax to the municipality. The Court held them liable, and they have appealed.

By the Act of 1879, chap. 84, sec. 7, sub-sec.

53, a tax for the benefit of the Taxing District, of $200, payable quarterly in advance each year, is directly laid "upon the privilege of opening or establishing an insurance office or agency for the insurance of fire, life or accident, in the Taxing District, for companies not chartered by the laws of the State of Tennessee." By the Act of 1875, chap. 109, entitled "An Act to regulate the business of fire, and all except life, insurance companies," it is provided by sec. 8, that every company organized for any of the purposes named in the Act, not incorporated under the laws of the State, shall report semi-annually the premiums received on policies issued in this State, and, at the same time, pay into the treasury of the State the sum of $2.50 upon each one hundred dollars of premiums so ascertained, "*which shall be in lieu of all other taxes.*"

The companies joining in the agreed case fall within the provisions of the Act of 1875, and have paid the tax as therein prescribed, and claim exemption from the subsequent taxation of the Act of 1879, by reason of the limitation in the clause cited, which, they insist, is still in full force.

It has been held by this Court that a provision in the charter of an insurance company in this State for the payment to the State of a specific annual tax, "which shall be in lieu of all other taxes," will protect the company from further taxation by the State or any municipal corporation: *Memphis* v. *Hernando Insurance Co.*, 6 Bax.,

527. It has also been held that the provision of the Act of 1875, chap. 109, sec. 8, above quoted, stipulating that the payment of the specified tax "shall be in lieu of all other taxes," equally protected the companies from municipal taxation: *Memphis* v. *Foreign Insurance Cos.*, MSS. opinion at Jackson. It was conceded, however, in the latter case, that the provision of the Act, being only a privilege by law, not a contract by charter, could of course be repealed.

The Act of 1879 does, by the section cited above, undertake to levy an additional tax. The companies resist the collection of such tax upon the ground that the limitation protects them therefrom.

If the Act of 1875 had simply provided for the payment of the specified tax to the State, omitting the words, "which shall be in lieu of all other taxes," the right of the Legislature to levy the new tax would have been beyond doubt. For, in that event, the legislation would have been the exercise of inherent power, not limited by contract, and the two acts might well stand together. It is equally clear that if our State Constitution contained no provision on the subject, the validity of the subsequent legislation would not be affected by the use in the previous Act of the words, "which shall be in lieu of all other taxes." For, these words being in a general law not creating a contract, the Legislature might repeal them directly or by implication. The Constitution of

Home Insurance Company *v.* Taxing District.

1870 does, however, contain this clause in Art. 2, sec. 17: "All acts which repeal, revive or amend former laws, shall recite in their caption or otherwise the title or substance of the law repealed, revived or amended."

The argument on behalf of the companies is that the Act of 1879, to be operative in the levying of additional taxes on them, must be held to repeal the words, "which shall be in lieu of all other taxes" of the Act of 1875, and is to that extent, unconstitutional, because it neither recites in its caption or otherwise the title or substance of the law repealed.

The words relied on, as we have seen, do not amount to a contract, nor limit the power of subsequent Legislatures. They should be read as if the clause was written thus: "which shall be in lieu of all other taxes until the Legislature imposes other taxes." For that is what in legal effect they mean. In this view, nothing was repealed by the subsequent legislation, the clause in controversy being mere surplusage, and both acts remaining in full force.

If this construction be inadmissible, the second Act is incompatible with the first, and does repeal it by necessary implication. The question in this view is squarely raised, whether implied repeals are within the purview of the constitutional provision. It has not, heretofore, been deliberately considered and determined by the Court, although there have been expressions of opinion on the

point in cases in which its decision was, perhaps, not absolutely demanded: *State ex rel.* v. *Gaines,* 1 Lea, 734; *McGee* v. *State,* 2 Lea, 625; *State ex rel.* v. *McConnell,* 3 Lea, 332.

The present case, although not absolutely requiring its solution, has been selected in connection with another case in which the question is directly raised, for its discussion and determination.

Strictly speaking, a new statute does not repeal an old statute, however inconsistent with it. It is a mere form of expressing the result to say that the one repeals the other by implication. The prior act is not repealed, but rendered inoperative. And this is made plain by the fact that a direct repeal of the latter act, without any reference to the former, will, by a rule of the common law, give efficacy to the former. It was precisely because the old act never was repealed that it thereby became operative. It is a convenient, though inaccurate use of language to say that the new law repeals the old, and that the repeal of the new law revives the old. More properly the new act is an obstacle to the operation of the old act, which obstacle is removed by its repeal. It may well be doubted, therefore, whether a repeal by implication falls within the letter of the Constitution. It has usually been considered as if it did.

The question, in this view, is not one altogether of first impression. Several of the State Constitutions contain similar provisions; that is, provisions designed for the same purpose, some of

them couched in stronger language. A common provision in many of these Constitutions is thus worded: "No act shall ever be revived or amended by mere reference to its title, but the act revived or section amended shall be set forth or published at full length:" Cooley Const. Lim., p. 151, n. 1.

"It has been uniformly held," says Judge Cooley, "that statutes which amend others by implication are not within these constitutional provisions, and that it is not necessary that they even refer to the acts or sections which by implication they amend." He cites *Spencer* v. *State*, 5 Ind., 41; *Branham* v. *Lang*, 16 Ind., 481; *People* v. *Mahoney*, 13 Mich., 581; *Lehman* v. *McBride*, 15 Ohio, N. S., 593.

This conclusion has been reached partly from a consideration of the purpose for which the constitutional provision was adopted, and partly from the argument, *ab inconvenienti*, that a contrary decision would render legislation well nigh impossible. The first of these reasons, every Judge knows, is one which uniformly influences the judicial construction of statutes, where the meaning is at all doubtful. The evil intended to be remedied is a most potent factor in ascertaining the legislative will. It should have even greater weight in construing the work of a Constitutional Convention. For the language of a Constitution must necessarily be very general, admitting often of a broader sense than was meant to be conveyed. Error in the former case is, moreover, much less injurious, and more easily corrected than in the latter. And in

either case, whenever the statute or constitutional provision undertakes to limit the power of the political department, every intendment should be in favor of that department. A doubt, as has often been said by the courts in relation to the great prerogative of legislation, should inure to the benefit of the Government.

The evil which led to the adoption of the constitutional provisions under consideration was, undoubtedly, the passing of laws without the members of the Legislature being fully advised of what they were doing. "The mischief designed to be remedied," says Judge Cooley, "was the enactment of amendatory statutes in terms so blind that legislators themselves were sometimes deceived in regard to their effect, and the public, from the difficulty of making the necessary examination and comparison, failed to become apprised of the change made in the laws:" *People* v. *Mahoney*, 13 Mich., 455. The same is equally true of repealing statutes which fail to call the attention of the Legislature to the substance of the act repealed. The evil, it will be noticed, only applies to statutes which purport to repeal, revive or amend. No such evil can follow direct and positive legislation, which precisely because it is positive, repeals by implication previous legislation. For, in such case, the Legislature of course know what they propose to pass into a law, and intend that it shall be the law, whatever may have been previously enacted. "The very fact," says the Supreme Court

of Maryland, " of establishing a particular rule of conduct for the public pre-supposes an intention on the part of the Legislature that a contrary rule to that which previously existed should prevail, and therefore the enactment of one law is as much a repeal of all inconsistent laws, as if the inconsistent laws had been repealed by express words:" 7 Md. 151, 159. Not the least possible danger can arise from a repeal by implication. For such a repeal is not favored nor admissible unless the positive provisions of the new law are utterly irreconcilable with the old law, thus unmistakably showing to the satisfaction of the judiciary that the repeal was intended.

On the other hand, the evils of a different construction of the constitutional provision are obvious and striking. It would result in turning what was intended to prevent unadvised legislation into a barrier to all legislation, and a certain snare to the legislator. " It would render," says the Supreme Court of Maryland, " many wholesome laws wholly inoperative, because of the inability or neglect of members to search thoroughly the statute books for laws which might be inconsistent or repugnant, a work of so great difficulty as to amount almost to an impossibility :" 7 Md., 159. The difficulty of determining the effect of a new statute of a general nature on the pre-existing system is notoriously great. Time alone, and the practical application of the new law to the varying phases of actual cases can show the ultimate results. To

require from our legislators in advance what the wisest lawyer or judge would find a hopeless task upon serious study would indeed go far to render legislation impossible. Nor would this be the greatest evil. It would often happen, after a new statute had been acted on and treated as valid for years, that some old statutory provision would be discovered which would annul it *ab initio.*

That the constitutional provision under consideration does not apply to repeals by implication seems to be sustained by reason, as it certainly is by authority.

The Chancellor's decree must be affirmed with costs.

FREEMAN, J., delivered the following dissenting opinion.

The question in this case is, whether an existing statute can be repealed under our present constitution without complying with the last clause sec. 17 of Art. 2, of that instrument. In other words, whether a statute may be repealed by implication as well as by direct reference, as required? I think this is the real question. The clause of the constitution is, " *all* acts which repeal, revive or amend former laws, shall *recite* in their caption, or otherwise, the title or substance of the law repealed, revived or amended."

What is the plain meaning of this language, and from this, what the purpose of the convention in its adoption, is the question to be decided.

When that meaning is fairly ascertained the duty is one nobody questions, abstractly at least, on the part of this Court, to enforce it. It is true, we must arrive at that meaning by the usual and well-known rules of interpretation, one of which is to look at the evils intended to be remedied, and then read the language in the light of this, solely with the purpose of getting at the purpose of the enactment. The language used, however, is to be looked to as primarily expressing this meaning. When this is ascertained it must control.

In the language of Chief Justice Marshall, 4 Wh., 202 and 203, "Although the spirit of an instrument, especially of a constitution is to be respected, yet the spirit is to be collected chiefly from its words. It would be dangerous in the extreme to infer from extrinsic circumstances that a case for which the words of an instrument expressly provide shall be exempted from its operation, where words conflict with each other, where different clauses of an instrument bear on each other, and would be inconsistent, unless the natural and common import of the words be .varied, construction becomes necessary, and a departure from the obvious meaning of words is justifiable. But if, in any case, the plain meaning of a provision, not contradicted by any other provision in the same instrument, is to be disregarded, because we believe the framers of that instrument could not intend what they say, it must be one in which the

Home Insurance Company *v.* Taxing District.

absurdity and injustice of applying the provision
to the case would be so monstrous that all man-
kind would, without hesitation, unite in rejecting
the application." I take it, this statement of the
principle that should guide courts in expounding
the constitution, as given by the great Chief Jus-
tice in the above extract, will be conceded by all
to be substantially sound.

What is the plain meaning of the language?
What its natural import? What the fair interpre-
tation? To give effect to the intent of the law-
maker, in case of a law, and of the people, in
adopting a constitution, is the object of all con-
struction or interpretation. But that intent is to
be found in the instrument itself, and says Judge
Cooley, Const. Lim., p. 54. "It is to be presumed
that language has been employed with sufficient
precision to convey it, and unless examination
demonstrates that presumption does not hold good
in the particular case, nothing will remain but to
enforce it." *Possible* or even *probable* meanings,
when one is plainly declared in the instrument it-
self, the courts are not at liberty to search for
elsewhere: *Ibid*, 55–56.

The framers of the constitution and the people
who adopted it must be understood to have em-
ployed words in their natural sense, and to have
understood what they meant: *Gibbons* v. *Ogden*,
9 W., 188: Cooley, 58–59.

In the light of these obvious and unquestioned

rules of exposition, let us look at the language used, and find its meaning.

*All* acts which repeal former laws, *shall* recite in their caption, or otherwise, the title or substance of the law repealed. I quote the language referring to repeals, so as to make its bearing more distinct, leaving out the other words at present, with reference to reviving or amending laws.

Now, what is the natural sense of the language used is the first question. We must assume a knowledge on the part of the convention of what everybody engaged in framing a constitution may fairly be expected to know, that laws might be repealed in two ways, one by a law specifically enacting that the unnecessary or obnoxious law is hereby repealed, or by indirection or implication, by passing a law on the same subject inconsistent with the former law, so that the two enactments conflict, and both cannot stand together. Each of these modes of repealing a statute were well-known, and the one as well as the other. We take this as a fact would be conceded.

Now, is it not fair to assume. that with this knowledge, the convention, when they provided how laws should be repealed, and how *all* laws should be repealed, had in view the long established and equally well-known means by which this could be done, and as they knew would be done in the future? Certainly this is a fair assumption, unless they had chosen to discriminate between the two modes, and provided that it

should be done, in the one case under certain regulations, and in the other under different ones; or in the latter case should be subject to no additional regulation, but remain as then permitted.

Now, the theory by which implied repeals of statutes must be sustained under the constitution as it stands, involves the maintenance of the proposition, that such difference is provided for, · or can be found in a proper interpretation or construction of the language used by the convention. If such difference can be fairly made out by any legitimate interpretation of the language used, or construction to be arrived at by knowledge of the end to be attained, as throwing light on its meaning then we cheerfully yield to such a conclusion. But this must be done, you must recite in the caption or title of the repealing law, or otherwise, either the title of the law repealed, or the substance of such law so repealed. This is as plain as language can make it. If you enact a law that repeals another statute, you must recite in the one way or the other, either the one thing or the other, that is the title or the substance of the Act repealed, or else it cannot be repealed. This is what is said in the plainest possible terms.

But it is insisted that the language only means that such laws as specifically or directly repeal former laws, shall be so referred to, but has no application to laws that repeal other laws by necessary implication.

Let us see if such an intent can be gathered

from the language used, without resorting to ingenuity rather than the words used. It is *all acts which repeal,* not such laws as are directly purposed to repeal, but all acts which do in fact repeal former laws, shall conform to this requirement. The only question is, does an act repeal a former law? If so, then the title or substance of the law repealed must be recited in its caption or otherwise. Now, this must apply to a law repealing by necessary implication, unless we can find something in this section itself, or in some other part of the constitution, that qualifies its meaning. There is nothing in the section to do this; certainly nothing in any other clause of the instrument having the slightest bearing on the question. We can only say it does not apply to implied repeals, as a matter of interpretation or construction, by holding that the word "all" can be restrained or restricted in its meaning, to a part, and that probably the smaller part of the subject to which it refers. If the word *all* can ever be contracted into the meaning that it refers only to a *part*, or less than the whole, then the view sought to be maintained can be found it, in otherwise not.

It seems to me that the very statement of the proposition contended for necessarily involves the reply to it. It is, that a law may be repealed by the enactment of another law by the Legislature, without mentioning or reciting, either in the caption or otherwise, the title or substance of:

the law so repealed. You have but to set over
against this proposition the language of the con-
stitution, that *all* acts which repeal *shall* recite in
their caption or otherwise, the title or substance
of the law repealed, to see that the one proposi-
tion is as distinctly and definitely antagonistic to
the other as our language will permit. The propo-
sition asserted in the language of the constitution
is, you cannot. So that after all it is but the
question, which shall prevail, the constitution or
the exposition contended for ?

We think this statement of the proposition, by
the side of the language of the constitution is the
most conclusive answer that can be made to it.
It is impossible to affirm the one without con-
tradicting the other.

The language of the constitution, in order to
sustain the other view, would have to be qualified
about as follows :    All laws, except such as repeal
laws by implication, shall recite, etc.    But would
not this be to interpolate upon the clause by con-
struction, an additional element of a most impor-
tant character?    Why not as well say, except
such laws as may by the courts be deemed useful
or wise, or such as should properly be enacted ? or
rather, to put an illustration more directly in the
line of argument by which the opposite view is
maintained, except such laws as we can see the
Legislature clearly understood, or where the mean-
ing and purpose is clearly expressed ?    But would
not this be constitution making instead of exposi-

sition of one as made? If it had been so designed it would have been easy for the convention to have said so.

That the language includes all modes of repeal, we believe is not denied. Now, on what principle are we to assume that the convention used this general language to express a limited meaning contrary to the natural sense of the terms?

To use the language quoted from Chief Justice Marshal, " It would be dangerous in the extreme to infer from *extrinsic* circumstances that a case for which the words of the instrument expressly provide shall be exempted from its operation." Yet, is it not precisely by this process, and by no other, that the opposite view which we combat is maintained? Is it not by insisting upon the argument from inconvenience or embarrassment to the Legislature, that the language is sought to be restricted in its application and is not this extrinsic circumstance used to sustain the inference, that a case certainly provided for by the language clearly embraced in it, shall be exempted from its operation? If so, the principle stated, recognized and approved by this Court, and one, as we think, of undoubted soundness, must be set aside, and its opposite adopted, which is, that notwithstanding the language is clear and unmistakable, because of assumed difficulties in its application, we must hold it does not mean what it says, but something else. On this principle, it seems to us, the constitution can have no fixed meaning, but may and

will be made as variable as the assumed exigencies of the Legislature or society may make it, the very evil intended to be met by the adoption of written constitutions, that the supreme law of the land should remain permanently fixed until changed by the power that ordained it.

We must also assume the convention did not know that laws might be repealed in two ways, or else, that with a full knowledge of this, it adopted language that included all ways of repeal, with the distinct purpose, that only one should be regulated. Unless this is so, then the construction contended for cannot be maintained, for all admit that the purpose or intent shall be carried out. To assume the convention used language which included and regulated, in its plain meaning, all ways known of repealing a law, intending thereby to confine it to only one mode of repeal, is to challenge their intelligence in the use of language, and to assume that they did so without knowing the meaning and force of the words used, is equally to infringe upon their intelligence; a construction that goes upon either view must be essentially erroneous.

But upon what principle can we say that in view of the evils intended to be remedied, the meaning of the language is to be restricted to direct repeals?

The evils are thus stated with reference to amendments and revisions of statutes and this general subject, by Judge Cooley, quoting from

*People* v. *Mahoney,* 13 Mich. R., 497; Const. Lim., p. 150: " The mischief designed to be remedied was the enactment of amendatory, and we add, repealing statutes, in terms so blind that the legislators themselves were sometimes deceived in regard to their effect, and the public, from the difficulty in making the necessary examination and comparison, failed to become apprised of the changes made."

The object then was, that when a law was repealed or amended, it should be known and announced what law was to be amended or repealed. To effect this purpose, so that the Legislature and the public should know or have their attention called directly to the source of knowledge, it is required that *all* acts which repeal, revive or amend former laws, shall recite in their caption or otherwise the title or substance of the law repealed, revived or amended."

Now let us deal fairly with this question. Does not a law, directly repealing a former law, of necessity, by the very nature of the thing to be done, more definitely carry this desirable knowledge to the body enacting it, than in the case of implied repeals? In the case of direct repeal, you are compelled to refer to the law repealed in terms more or less specific, in order to identify it as the object of the enactment. It would fail of its object entirely if it failed to do this, and no one could tell what it was to operate on. Whenever you make it effective as a law repealing another

law, you are compelled to give that law so repealed, identification; and when this is done, the source of knowledge is pointed out, so that it may be known, probably as effectually as is done in most cases by reference to the title. So, that if this was all the evil, it could not, in the nature of the subject, exist to a very great extent in this aspect of the question.

But in case of implied repeals, where the result is produced by comparison of the matter of the last law with the matter of former laws on the same subject, you repeal, without anything whatever on the face of the law to guide you as to how many statutes are swept away. The Legislature, courts and people in this case are left to their knowledge of the general subject, and of all the statutes on the subject, in order to know what has been done, or is being done, with not a hint from the face of the enactment to guide them, or to suggest the sources of knowledge on the subject. Now, if the evils be as stated, surely the greater need was that this provision should apply to repeals by implication rather than to statutes directly repealing another. In the one case, *ex necessitate*, a reference to the law must be made, more* or less definite, certainly so as to identify it; in the other case the statutes can be repealed without such reference, and give no indication whatever as to what is done, and it can only be arrived at by comparison of the last act, with all pre-existent statutes on the subject, with

memory and knowledge alone to guide in the search for them.

Ingenuous answers may be made to this by saying, formerly a law might have been repealed by reference to the chapter of the statute book, and this would have been very indefinite, or to the title of an act, and these might give no indication of what it contained. Concede this even, and yet this would point more directly to the law repealed than the principle of · implied repeals contended for, as there would be a reference to the law so distinct in this that it could readily be referred to, the source of knowledge is pointed out, it may be not very clearly, it is true, but in the case of implied repeals, even this much is not done, but the Legislature is left to depend entirely upon its knowledge of the previous statute, or to grope in the dark for information with no guide at all.

On the view maintained, a law not mentioning or referring to a law, may repeal it by implication, while one purporting to do so, with defective recital, would be void.

But it is said when you enact affirmative matter all know what they are voting for, or may know, and so they know in every case of repeal, revivor or amendment. They read or hear read the entire matter of the bill, in the one case as well as the other. But knowledge of the affirmative matter of a bill is not what is involved. It is what laws are repealed, revived or amended,

that are required to be referred to, and you are
further from this in the case of implied repeals
of necessity, than in the case of a direct repeal,
containing any reference whatever to the law re-
pealed or amended, however indefinite, so that it
is clear enough to identify the law on which it is
intended to operate.

We are totally unable to see the force of the
argument attempted to be drawn from the assumed
evil to be remedied. On the contrary, we think
it is unmistakably in favor, as far as it can go,
almost conclusive in favor of the opposite conclu-
sion than that for which it is presented. Cer-
tainly, in connection with the clear meaning of
the language, this argument gives all its real
weight in favor of the rule we maintain.

The argument, from inconvenience, we frankly
say, has but little weight with us in any way.
We think a sound policy is in favor of the con-
struction we have given this clause of the Con-
stitution.

The idea that a Legislature cannot comply with
this plain rule of the Constitution, must rest on
the assumption of defect of intelligence in that
body, an assumption not respectful to make. If
true, then it is a matter of the most vital impor-
tance to the State, that every rule of the Consti-
tution that tends to create a demand for higher
intelligence in this body shall be sternly enforced.
If the rule of construction adopted shall even tend
to give the ablest and best trained intellects of

that body an influence that shall be more controlling, it is one that should be unflinchingly maintained.

That every bill which is to repeal, amend or revive another law, should refer to that law, either by title or by substance, compels the member preparing it to look into the law repealed, revived or amended, and know what it contains, or else he will fail of his purpose. If he cannot do this, he will be compelled to rely on some man of more intelligence to do this for him in order to put his law in proper form to meet the requirement of this article of the Constitution. In either case the desirable end is attained, and the existent law is scanned critically, and the remedy understandingly applied. Believing this worth effecting, and the views herein laid down tend in this direction, it is deemed vitally important they shall be maintained.

As to the difficulty of complying with the requirement, they are not seen to exist in fact when the matter is practically looked at. It can be no great hardship when a bill is to be enacted that changes the existent law, that a legislative body should be required to know what the law at the time is which is to be overturned. If their attention is called to it by reference to its title or substance, it may be, in many cases, it will be found the old law is the better, or the proposed amendment not desirable. At any rate it can do no harm that it shall be known before it is de-

stroyed. The work will, at least, be more intelligently done.

We have seen no case yet where the Constitution may not readily be complied with. We have but to insist on a compliance with the Constitution, and it must be done, or the bills will not become law, and if no other benefit accrues to the country, we will be relieved of hasty and ill-understood legislation.

We have no hesitation in maintaining it to be the sounder policy to bring the legislator up to the Constitution, rather than lower the Constitution, on the implied assumption of a lower standard of intelligence in the legislative body. To act on the one principle, we think, tends to bring that body up to the higher standard; while the other view tends to increase the evil, if it exists, by permitting such loose legislation, as the lower standard of intelligence, is competent, to prepare and enact. We do see, as we think, that any policy based on the assumption of a want of the highest intelligence in the Legislature, and that shall lower the requirement for usefulness on any such principles, tends to produce the evil implied. If this be so, public policy and the best interest of the State demands the opposite rule to be enforced.

The authorities cited on this question, Cooley's Const. Lim., p. 150, in which the rule discussed is held not applicable to revisions or amendments, do not have weight or bearing on this question.

They are opinions under a clause of the Constitution of Michigan and other States, which is, that " no law shall be revised, altered or amended by reference to its title only, but the act revised, and the section or sections amended shall be re-enacted and published at length. It is in reference to such a provision as this that evils and embarrassments are pointed out by Judge Cooley, citing his opinion in *People* v. *Mahoney,* 13 Mich,, 497, making it necessary, as he says, to give a reasonable construction to the act, so as not to include the case of an implied amendment resulting from an affirmative and definite and independent law, amending a former provision of law on the same subject, or qualifying it. He says: "If you are to re-enact and re-publish the various laws relating to all the subjects modified, we shall find before the act is completed that it not only embraces a large portion of the general laws of the State, but also, that it becomes obnoxious to the other provision referred to, as embracing a large number of subjects, only one of which can be embraced by its title."

But this has no application under our Constitution. The laws repealed are not to be re-enacted or published, so as to encumber the statute book or lead to confusion, but only to be referred to by their title or substance, a provision easily complied with, not encumbering either the title or body of the act.

To use this authority in support of the rule

now under discussion is, as we think, a clear mis-application of the principle announced. To avoid a construction that would produce results such as are stated, might be justified in the case stated by Judge Cooley; but to cite this as authority, in opposition to a rule that produces no such results, where no such evils are found, is illogical, and shows the principle has no application and gives no support to the view for which it is cited. No re-enactment or re-publication of the statute repealed is required by our Constitution, consequently a construction applicable to a Constitution having such a requirement, and based on it, is foreign to the matter in hand, and furnishes no aid in its solution. Other cases are cited, but we do not think their reasoning satisfactory. If we are to depart from the meaning of the language of the Constitution on the idea of inconvenience, or of public policy, it is well to look for a moment to see how far the principle may lead, and whether the policy of this departure is justifiable or sound.

The argument from inconvenience is always dangerous, and can never be rightly followed, except in a case where the inconvenience is such that it would show that the convention did not intend what the language they have used literally implies, as where the provision would be impracticable, and such as could not with reasonable effort be carried out in practice. Otherwise we may be making a Constitution based on *our* notions of

Home Insurance Company v. Taxing District.

convenience and propriety, instead of giving effect to one made.

There are many requirements of the Constitution that are more or less inconvenient, but, nevertheless, they had a purpose, and serve a useful end. The language of the Constitution is clear and unambiguous, that all acts which repeal former laws, shall recite in their caption or otherwise the *title* or substance of the law repealed. If it was not felt that this provision had something of inconvenience in it, a doubt as to its meaning would hardly have been raised. In fact, we suspect that if it had not been that the Legislature, in many cases, has failed to comply with, it, there would have been no thought of any need for construction to arrive at the meaning of the provision. The fact that it has not been complied with furnishes an urgent reason that the plain meaning should be enforced.

As to the demands of public policy, as affecting this question, we need but say, that the principle at issue involves the question practically as to whether the Legislature shall in all cases know the entire scope and effect of their legislation, or may blindly enact statutes, repealing, it may be, whole systems of regulation without knowing it, or having their attention called to the statutes thus repealed.

In a word, whether it is better to be assured of intelligent action, or at any rate the means of knowledge, in cases of repeal of existing laws, or

that such repeals shall equally well be affected by unintelligent and unconscious acts, the results to be ascertained by the courts, and by them first known and defined, or shall all this be done by the Legislature itself? As between the two policies, we think there is no ground for hesitation. It certainly is the sounder policy that shall require of the legislative body, that it shall know and intelligently consider the results of its action; and that all it does shall be based upon an intelligent consideration of these results.

We only add, that if the view we combat is the correct exposition of the clause of the constitution, as to repealing laws, the same rule must be applied to the case of reviving a former statute, yet we doubt very much whether anyone, on this question, would maintain that a former statute would or could be revived by implication. If this be true, why not? Is it not simply because the requirement is, that in order to revive a former law you must recite in the caption the title or substance of the law revived? The language is the same as to repeals, as in case of reviving a former law, and the construction must be the same.

For these reasons, we think that the opinion of the Chief Justice, at the last term at this place, in the Hartsfield and McGee cases, 2 Lea, is the true exposition of the constitution, that implied repeals are forbidden by our constitution. By that opinion a most important law of the Legislature was declared void, and has been inoperative

ever since. Believing as we do, that it was a fair and correct construction of the clauses of the constitution under consideration, and that this construction carries out and subserves the policy intended to be embodied in the supreme law of the land by the convention, we can but enforce it.