MEMPHIS RETAIL LIQUOR DEALERS'
ASSOCIATION, INC., et al.,
Petitioners,

v.

CITY OF MEMPHIS et al., Respondents.

Supreme Court of Tennessee,
Western Division.

Feb. 21, 1977.

George T. Lewis, Jr., Lewis, McKee & Hall, Memphis, for petitioners.

Ross B. Clark, II, Laughlin, Halle, Regan, Clark & Gibson, Memphis, for respondents.

## OPINION

FONES, Justice.

Plaintiffs, an unincorporated association of retail liquor dealers, brought this action for declaratory judgment challenging the imposition of a municipal inspection fee and/or privilege taxes. Their contentions are that the inspection fee contravenes the Export-Import Clause, Article 1, Section 10, Clause 2, of the United States Constitution, that it was repealed by implication by a later privilege tax, that if it was not re-

pealed by the later tax, that the privilege tax cannot be applied and lastly that the State has preempted the field of inspections by virtue of a wholesale liquor sales tax act.

Both the Chancellor and Court of Appeals rejected all arguments and found the fee and privilege tax to be valid.

T.C.A. § 57–165, passed by the legislature in 1968, allows municipalities with populations over sixty thousand (60,000) to impose by ordinance an inspection fee on "licensed retailers of alcoholic beverages . . . located within said municipality." The fee is to be no more than five (5%) percent of the wholesale price of alcoholic beverages supplied by a wholesaler. T.C.A. § 57–166 provides that the fee will be collected by the wholesaler "at the time retailer makes payment for the delivery of the alcoholic beverages." T.C.A. § 57–168 further provides:

> "*Fee to be exclusive.*—The inspection fee provided for herein shall be in lieu of all other gross receipt or inspection fees imposed upon wholesalers or retailers of alcoholic beverages by municipalities and no other additional or similar fees shall be imposed by ordinance. . . ."

Pursuant to the preceding granted authority, the City of Memphis passed Ordinance No. 478 which implemented the five (5%) percent inspection fee.

In 1972, the legislature passed T.C.A. § 67–5801, et seq., which provided for the collection of certain privilege taxes. The tax specifically included alcoholic beverages and its retail levy on such beverages is one-tenth ($\frac{1}{10}$) of one percent (1%) of all retail sales. T.C.A. §§ 67–5805 and 5806. T.C.A. § 67–5801 provides, in part:

> ". . . It is the legislative intent that the taxes imposed by this chapter shall be in lieu of any or all ad valorem taxes on the inventories of merchandise held for sale or exchange by persons taxable under this chapter . . . ."

Plaintiffs first contend that the inspection fee violates the Export-Import clause of the federal constitution. They argue that the fee at times falls to rest on wholesalers who are in actuality importers of foreign goods. Mister Accardi, a Memphis wholesaler of alcoholic beverages, testified that the inspection fee is paid on wines and liquors imported from various countries and shipped directly to his wholesale house in Memphis. However, he acknowledged that the fees were not collected until after retailers had paid for their wholesale purchases.

In *Department of Revenue v. James B. Beam Distilling Co.,* 377 U.S. 341, 84 S.Ct. 1247, 12 L.Ed.2d 362 (1964) the United States Supreme Court examined carefully what types of imposts could be levied on imported liquor. The case involved a Kentucky tax of ten cents on any distilled spirits coming into that state from points without. The tax resulted in Beam having to pay ten cents on each gallon of whiskey imported from Scotland. The Supreme Court held:

> "The tax here in question is clearly of a kind prohibited by the Export-Import Clause . . . as this Court stated almost a century ago . . . 'the goods imported do not lose their character as imports . . . until they have passed from the control of the importer or been broken up by him from their original cases.' " 377 U.S. at 344, 84 S.Ct. at 1248 (Quoting *Low v. Austin,* 13 Wall. 29, 20 L.Ed. 517.

The distinction between *Beam* and the present case is evident. The tax is never levied upon the wholesaler under § 57–165, because it is paid only after the retailers have purchased and *paid for* the beverages from the wholesaler. Thus, unlike the wholesaler in *Beam,* the goods while not necessarily physically broken up have "passed from his control." We, therefore, find no violation of the export-import clause in the municipal inspection fee.

■ Before proceeding to the remainder of plaintiffs' contentions, we must first determine whether or not the inspection fee is actually what it purports to be, or is in reality a tax. In Tennessee, taxes are distinguished from fees by the objectives for which they are imposed. If the imposition

is primarily for the purpose of raising revenue, it is a tax; if its purpose is for the regulation of some activity under the police power of the governing authority, it is a fee. *City of Chattanooga v. Veatch,* 202 Tenn. 338, 304 S.W.2d 326 (1956); *Wright v. Town of Camden,* 195 Tenn. 295, 259 S.W.2d 529 (1953); *S. E. Greyhound Lines v. Knoxville,* 181 Tenn. 622, 184 S.W.2d 4 (1944).

The evidence shows that in fiscal year 1974, the City of Memphis collected $1,678,041.45 from the inspection fee. The total appropriation for the city commission charged with the municipal inspections of sales of alcoholic beverages was only $35,000.00 for the same year.

In *City of Chattanooga v. Veatch, supra,* this Court held that the amount of revenue raised did not convert a licensing fee into a tax:

> "It is no objection to a regulatory license that it produces more income than is required for its administration and enforcement." 202 Tenn. at 340, 304 S.W.2d at 327.

Plaintiffs insist that the bounds of this rationale is exceeded because the revenue generated is two hundred (200) times the cost of regulation. This argument might be valid if the activity regulated was anything other than the liquor business.

It is defendants' position that alcoholic beverages are a special activity and the fees imposed are actually part of the regulation. This theory stems from an old opinion of the United States Supreme Court, *Phillips v. City of Mobile,* 208 U.S. 472, 28 S.Ct. 370, 52 L.Ed. 578 (1908). The case involved fees levied by Mobile on liquor coming from outside the state. In finding a licensing fee to be a fee and not a tax on interstate commerce, the Supreme Court held that the amount of revenue raised did not change the character of the fee because of the nature of the activity regulated.

> "The sale of liquors is confessedly a subject of police regulation. Such sale may be absolutely prohibited, or the business may be controlled and regulated by the imposition of license taxes, by which those only who obtain licenses are permitted to engage in it. Taxation is frequently the very best and most practical means of regulating this kind of business." 208 U.S. at 480, 28 S.Ct. at 372.

This rationale was also utilized in a Supreme Court of Illinois case which again found a liquor license fee not to be a tax although it raised considerable revenue.

> "It is true, as a general proposition that a regulatory license fee must bear 'some reasonable relation' to the expenses involved in the supervision and inspection of the licensed business. (citations omitted). But this general proposition 'does not apply where the license charge is imposed on those occupations which, while they are tolerated, are recognized as being hurtful to public morals, productive of disorder, or injurious to the public, such as the liquor traffic' . . . the amount of the license fee may itself have a permissible regulatory effect." *Lalumio v. Fasseas,* 21 Ill.2d 135, 171 N.E.2d 43 at 44 (1960).

Most, if not all jurisdictions in the United States hold that the liquor traffic is subject to strict supervision or prohibition because it is potentially if not actually dangerous as harmful to the public health, morality and welfare. This power resides in the legislature and pursuant thereto, municipalities may be authorized to regulate and supervise. *Barnes v. City of Dayton,* 216 Tenn. 400, 392 S.W.2d 813 (1965). The legislature has authorized municipalities to enact an inspection fee, not exceeding five (5%) percent of the wholesale price of alcoholic beverages, with no requirement that the fee bear any relationship to the cost of the inspection, direct or indirect. In short, the ordinance enacted by defendants is within the authority granted to them by the legislature acting within its power to supervise and regulate the liquor business.

Since we find the licensing fee is not a tax, plaintiffs' contention that § 67–5801 repeals by implication § 57–165 is without merit. Section 67–5801 is to be the exclusive ad valorem tax and is not in lieu of inspection fees.

Plaintiffs further argue that § 57–168 prevents the privilege tax from being collected because it also purports to be exclusive. A similar argument was made in *Home Insurance Company v. Taxing District*, 72 Tenn. 644 (1880). This Court held that acts which created taxes or fees were not contractual in nature and did not limit subsequent legislatures from changing them.

"The argument on behalf of the companies is that the Act of 1879, to be operative in the levying of additional taxes on them, must be held to repeal the words, 'which shall be in lieu of all other taxes' of the Act of 1875, and is to that extent, unconstitutional, because it neither recites in its caption or otherwise the title or substance of the law repealed.

The words relied on, as we have seen, do not amount to a contract, nor limit the power of subsequent Legislatures. They should be read as if the clause was written thus: 'which shall be in lieu of all other taxes until the Legislature imposes other taxes.' For that is what in legal effect they mean. In this view, nothing was repealed by the subsequent legislation, the clause in controversy being mere surplusage, and both acts remaining in full force." 72 Tenn. at 647.

We find that language controlling in this case.

Plaintiffs' final challenge of the municipal inspection fee is based on state preemption. They assert that T.C.A. § 57–706, which imposes a tax on wholesale sales for use by the alcoholic beverage commission, in some manner pre-empts the municipal inspection of retail sales under § 57–165. The two statutes are directed toward different areas of liquor traffic; § 57–706 is a provision dealing with wholesalers solely, while § 57–165 deals only with retailers. The argument that the former somehow pre-empts the latter is groundless.

Affirmed.

Costs are adjudged against plaintiffs.

COOPER, C. J., and HENRY, BROCK and HARBISON, JJ., concur.