IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 2000 Session

## HOME BUILDERS ASSOCIATION OF MIDDLE TENNESSEE, ET AL. v. MAURY COUNTY, TENNESSEE, ET AL.

Appeal from the Circuit Court for Maury County
No. 8595    Stella L. Hargrove, Judge

No. M1999-02383-COA-R3-CV - Filed August 31, 2000

Two homebuilders and their trade association asked the trial court to declare that a privilege tax imposed on new construction in Maury County was in fact an unconstitutional impact fee. The County and the State both filed motions for summary judgment, which were granted by the trial court. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which PATRICIA J. COTTRELL, J., joined. WILLIAM C. KOCH, JR., J. filed a concurring opinion.

L. Bruce Peden, Columbia, Tennessee, for the appellants, Homebuilders Association of Middle Tennessee, Larry Reaves, and Dino Roberts Homes, Inc.

William H. Dale, Jr., Columbia, Tennessee, for the appellee, Maury County.

Paul G. Summers, Attorney General and Reporter, and Winston B. Sitton, Assistant Attorney General, for the appellee, Paul G. Summers.

## OPINION

### I.
#### A PRIVATE ACT FOR MAURY COUNTY

On May 30, 1991, the Tennessee Legislature passed a private act called the "Maury County Adequate Facilities Tax Act." Its preamble stated that the introduction into the county of the Saturn auto plant had been a tremendous stimulus to growth, and had created a great need for new infrastructure to accommodate that growth. In order to prevent the costs of new public facilities

from falling solely on current residents, the act authorized the County to "levy and collect a privilege tax on new development in the county . . ." and to adopt a "capital improvements program" to identify the needs to be funded by the tax [Private Acts 1991, Chapter 118].

Maury County did not implement the new tax immediately, but on January 19, 1999, it enacted a capital improvements plan and a development tax of $ .50 per gross square foot on new residential development, and $ .30 per gross square foot on new non-residential development, to be paid at the time a building permit was obtained from the county.

Shortly thereafter, Plaintiff Larry Reaves, a member of the Home Builders Association of Middle Tennessee, applied for a building permit in order to construct a house in a new subdivision. He obtained the permit after paying his tax of $283.50 under protest. Dino Roberts Homes, another Association member, also applied for a building permit, and paid a tax of $1,195 under protest.

On March 8, 1999, Mr. Reaves and Dino Roberts Homes joined with the Home Builders Association in filing a declaratory judgment complaint, naming Maury County and the Attorney General as defendants. *See* Rule 24.04, Tenn. R. Civ. P. The plaintiffs asked the court to declare Private Act 118 unconstitutional, contending among other things that the erection of shelter from the elements was a natural right and not a privilege, and thus could not be subject to a privilege tax. The two builders also asked for a refund of the sums they had paid.

The parties filed cross-motions for summary judgment. After hearing argument from both sides, the trial court found that the challenged Act created a valid privilege tax, and on December 13, 1999 it granted the defendants' motions for summary judgment. This appeal followed.

## II.
### CAN BUILDING A HOUSE BE A TAXABLE PRIVILEGE?

This case presents no disputes as to facts, but turns entirely on the validity of the plaintiffs' argument that the financial exaction imposed on new construction in Maury County is in fact a constitutionally invalid impact fee in the guise of a privilege tax.

The plaintiffs contend that the building of a shelter on one's own property is not a privilege, and thus cannot be made subject to taxation. They further contend that the exaction bears all the earmarks of an impact fee, except for the fact that the revenue collected is not segregated for the benefit of fee-paying property owners, and that this violates their substantive due process rights. In order to address this argument, we must briefly discuss the scope of the taxing power at issue.

Article II, Section 28 of the Tennessee Constitution gives the legislature the authority "to tax merchants, peddlers, and privileges, in such manner as they may from time to time direct." The Constitution does not define "privilege." However, numerous judicial decisions dealing with privilege taxes indicate that the legislature's power to declare activities to be privileges and to tax them as such is extremely broad.

-2-

For example, *Seven Springs Water Co. v. Kennedy*, 299 S.W. 792 (Tenn 1927) was a case involving a property-owner who sold water collected from a spring on his own land. In upholding a tax on that activity, the court declared that "privilege" meant "any and all occupations that the legislature in its discretion chose to declare a privilege and tax as such." The courts have even speculated that the act of farming could be a taxable privilege if the legislature deemed it as such. *Mabry v. Tarver*, 20 Tenn. (1 Hum.) 93 (1839).

While some of these earlier cases implied that the privilege tax could only be imposed upon the pursuit of some business or occupation, other cases have shown the taxing power to be broader than that. Thus, the pursuit of pleasure may also be taxed, whether that involves such activities as driving a car for pleasure on county roads, *Ogilvie v. Hailey*, 141 Tenn. 392 (Tenn. 1918), or purchasing tickets for any place of amusement in Knox County, *Knoxtenn Theatres v. Dance,* 208 S.W.2d 536 (Tenn. 1948). Use taxes are also privilege taxes, *see Madison Suburban Utility District of Davidson County v. Carson,* 232 S.W.2d 277 (Tenn. 1950), and are imposed upon the privilege of "using, consuming, distributing or storing tangible personal property after it is brought into the state." *See also Foster & Creighton Co. v. Graham*, 154 Tenn. 412 (1925).

The power to tax privileges is so expansive that some opinions have stated it to be almost without limit. In *Hooten v. Carson*, 209 S.W.2d 273 (Tenn. 1948), the Court relied upon extensive earlier precedent in stating that "[t]he power to tax privileges is not subject to any constitutional limitation except that the tax levied must not be arbitrary, capricious or wholly unreasonable." In an older case, the Court even stated that "[a] privilege is whatever the legislature chooses to declare to be a privilege, and to tax as such." *Kurth v. State*, 86 Tenn. 134 (1887). However, in a more recent case cited to us by the appellants, the Court said to the contrary that,

> "It cannot be denied that the Legislature can name any privilege a taxable privilege and tax it by means other than an income tax, but the Legislature cannot name something to be a taxable privilege unless it is first a privilege."

*Jack Cole Co. v. McFarland*, 337 S.W.2d 453, 455 (Tenn. 1960).

While the *Jack Cole* case indicates that the legislative power cannot be quite as expansive as the statement from *Kurth* implies, the appellants must carry a heavy burden if they are to persuade us that their activities should be exempt from taxation. As we stated above, the appellants' arguments are premised upon the idea that the act of building a shelter upon one's own property cannot be deemed to be a privilege, but is more appropriately classified as a natural right, like breathing or eating, and is therefore not properly taxable.

Similar natural rights arguments were made in some of the other cases we mentioned. In *Hooten v. Carson*, supra, the plaintiff argued that purchasing food was not a privilege, but an absolute necessity if he wished to eat, and that the sales tax on food (which is also a species of privilege tax) was therefore invalid. Our Supreme Court rejected this contention. In *Knoxtenn Theatres v. Dance*, supra, the Court observed that "many of the natural rights of man have

necessarily been regulated by laws enacted under the police powers and under the power to raise revenue." 208 S.W.2d at 538. Thus, just because some activity can be arguably called a natural right does not mean it cannot also be declared a taxable privilege.

It seems somewhat disingenuous for these particular plaintiffs to make the natural rights argument, for there is nothing in the record to indicate that any of them intended to build a shelter for his own use. They appear to be real estate developers, who are challenging the privilege tax for the benefit of their business operations in Maury County. The natural rights argument would have had more resonance earlier in our history, when many, or even most, Tennesseans built their own homes and grew their own food. But as we mentioned above, even then the courts considered it within the power of the legislature to subject the pursuit of farming to privilege taxes if it chose to do so. *Mabry v. Tarver*, 20 Tenn. (1 Hum.) 93, 98 (1839). Therefore, we believe the act of developing real estate can constitute a taxable privilege.

### III.
#### DOES CHAPTER 118 CREATE A PRIVILEGE TAX OR AN IMPACT FEE?

Appellants argue that Private Act 118 creates an impact fee rather than a privilege tax, and cite its close resemblance to Public Chapter 1022 (enacted 1988), which authorized Davidson County to impose an impact fee on new development within its borders. Appellants note that both enactments reference the need created by growth and development to finance public facilities, both require the taxing authority to create a capital improvements program before imposing the fee, both trigger payment at the time a permit or certificate of occupancy is issued, and neither identifies the person liable for payment of the tax or fee.

We note, however, that there are also significant differences between Public Chapter 1022 and Private Chapter 118. For example, Chapter 1022 requires that the "fair share impact fees" collected under it "be reasonably attributable or reasonably related to the service demands of the development which is assessed the fee," and that they be "used and expended to the benefit of the development that pays the fair share impact fee." The Act also requires that collected fees be put into a trust fund which clearly identifies the type of facility for which the fees were imposed. Chapter 118 contains no such requirements.

Appellants argue that Chapter 118 and the capital improvements plan enacted pursuant to it do not meet the constitutional requirements of a regulatory exaction measure, because they do not require that the funds collected benefit the property from which it is derived. Thus for example, the county could collect a great deal of revenue from the northern half of its territory, and allocate all of it to roads in the southern half. We agree that the Private Chapter tax would not pass muster as a regulatory exaction.

However, the difference between a tax and a regulatory exaction or fee is that a tax is imposed primarily for the purpose of raising revenue, and a fee is imposed as part of the regulation of some activity under the police power of the governing authority. *Memphis Retail Liquor Dealers'*

*Ass'n, v. City of Memphis*, 547 S.W.2d 244 (Tenn. 1977). The revenue that is collected in fees is used to defray the costs of collecting them and to provide services or benefits to the persons paying them. *City of Tullahoma v. Bedford County*, 938 S.W.2d 408 (Tenn. 1997). The revenue derived from taxes is used for general public purposes, and there is no requirement that the individual taxpayer receive any specific benefit from the use of funds raised by the taxation. *Nashville C. & St. L. Ry v. Wallace*, 288 U.S. 249 (1933).

We see nothing in the Private Act to indicate that it was meant to be a regulatory measure. It does not change the construction standards a developer must meet in order to obtain a building permit, limit who may or may not be a developer, or impose any new requirements designed to restrict or limit development in any way. Its purpose is clearly to raise new revenue, and while that revenue is to be disbursed for the creation or improvement of public facilities, there is no requirement that those facilities benefit the individual taxpayer.

The tax is collected at the time a building permit is issued because that is the most logical and convenient time to do so. An application for a building permit accompanied by the detailed plans required for the permit show a developer's fixed intention to begin building within a short time. The building code, and the rules and regulations that must be complied with in order to obtain a building permit are an example of the exercise of the police power to regulate development, and the charge for such a permit is properly called a fee. Since the exaction at issue does not alter those rules or regulations in any way, it is properly understood to be a privilege tax.

**IV.**

The judgment of the trial court is affirmed. Remand this cause to the Circuit Court of Maury County for further proceedings consistent with this opinion. Tax the costs on appeal to the appellants.

_____
BEN H. CANTRELL, PRESIDING JUDGE, M.S.