IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
March 31, 2003 Session

## McMINN COUNTY v. OCOEE ENVIRONMENTAL SERVICES, INC., ET AL.

**Appeal from the Chancery Court for McMinn County**
No. 20324     John B. Hagler, Judge by Interchange

**FILED JULY 9, 2003**

**No. E2002-00702-COA-R3-CV**

This appeal questions the validity of a resolution enacted by Appellant McMinn County imposing a surcharge for solid waste disposal at all Class I landfills located in McMinn County. The resolution as initially passed imposed a surcharge of $4.00 per ton of waste, and was subsequently reduced by McMinn County to $2.75 per ton. Appellee Environmental Trust Company ("ETC"), which owns one of the two landfills in the county, refused to pay the surcharge, asserting that it was actually an unlawful tax. McMinn County filed this action to require ETC to pay the surcharge. The Trial Court held that the resolution imposed an unlawful tax, and granted summary judgment in favor of ETC. We affirm the judgment of the Trial Court.

**Tenn.R.App.3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Cause Remanded**

HOUSTON M. GODDARD, P.J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR. and D. MICHAEL SWINEY, JJ., joined.

Vance L. Baker, Jr., Athens, Thomas J. Walsh, Jr., Memphis, and Brian L. Kuhn, Memphis, for the Appellant, McMinn County

H. Chris Trew, Athens, for the Appellee, Environmental Trust Company

**OPINION**

There are presently two Class I landfills located in McMinn County. The McMinn County landfill is owned and operated by the County. The Meadow Branch landfill, formerly known as the Mine Road landfill, is owned and operated by ETC. On February 21, 2000, the McMinn County Commission passed a resolution imposing a surcharge of $4.00 on each ton of solid waste processed at all Class I solid waste disposal facilities or incinerators in McMinn County. After the Commission subsequently realized that the funds generated by this surcharge could not be legally used to defray

the cost of building water lines down gradient of the Meadow Branch landfill, as was its original intention, the Commission passed a resolution reducing the surcharge to $2.75 per ton.

ETC refused to pay the surcharge, arguing that it is actually an unauthorized and unlawful tax. McMinn County filed this action on December 8, 2000, asking the Court to require ETC to pay the surcharge plus late penalties, interest and attorney's fees. Both parties moved for summary judgment. After a hearing, the Trial Court granted ETC's motion, denied the County's motion, and dismissed the action.

Tenn.R.Civ.P. 56.04 provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In the present case, the facts are not in dispute, and the only issues are questions of law. Consequently, the scope of review is *de novo* with no presumption of correctness. *See* Tenn.R.App.P. 13(d); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn.1993).

In support of its argument on appeal that the Court erred in finding that its ordinance was an unauthorized tax, McMinn County cites the following sections of T.C.A. 68-211-835, a part of the statute known as the Solid Waste Management Act of 1991:

> (f)(1) In addition to any fee authorized by title 5, and to any tipping fee imposed by any local government under this section, a county, municipality or solid waste authority is authorized to impose:
>
> (A) A surcharge on each ton of municipal solid waste received at a solid waste disposal facility or incinerator for expenditure for solid waste collection or disposal purposes consistent with this part; and/or
> (B) A solid waste disposal fee authorized by subsection (g).
>
> (2) The surcharge authorized to be imposed by a county by subdivision (f)(1)(A) shall not take effect until a regional solid waste plan is approved for such county.
>
> (g)(1) In addition to any power authorized by title 5, a county, municipality or solid waste authority is authorized to impose and collect a solid waste disposal fee. Funds generated from such fees may only be used to establish and maintain solid waste collection and disposal services, including, but not limited to, convenience centers. All residents of the county shall have access to these services. The amount of the fee shall bear a reasonable relationship to the cost of providing the solid waste disposal services. Such fees shall be

> segregated from the general fund and shall be used only for the purposes for which they were collected.

The Supreme Court has provided the following guidance in determining whether an assessment such as the ordinance at bar is an unauthorized tax or an authorized fee:

> Whether the charge for depositing waste in a landfill is a tax or a fee, even though denominated a tax, is determined by its purpose. A tax is a revenue raising measure levied for the purpose of paying the government's general debts and liabilities. . .A fee is imposed for the purpose of regulating a specific activity or defraying the cost of providing a service or benefit to the party paying the fee.

*City of Tullahoma v. Bedford County*, 938 S.W.2d 408, 412 (Tenn.1997)(citations omitted). In the earlier case of *Memphis Retail Liquor Dealers' Ass'n. v. City of Memphis*, 547 S.W.2d 244 (Tenn.1977), the Court stated:

> In Tennessee, taxes are distinguished from fees by the objectives for which they are imposed. If the imposition is primarily for the purpose of raising revenue, it is a tax; if its purpose is for the regulation of some activity under the police power of the governing authority, it is a fee.

547 S.W.2d at 245-46. The *Memphis Retail Liquor Dealers* Court upheld the general principle that a regulatory fee "must bear 'some reasonable relation' to the expenses involved in the supervision and inspection of the licensed business."[1] 547 S.W.2d at 246; *accord Porter v. City of Paris*, 201 S.W.2d 688 (Tenn.1947) ("The fact, that the fees charged produce more than the actual cost and expense of the enforcement and supervision, is not an adequate objection to the exaction of the fees. The charge made, however, must bear a reasonable relation to the thing to be accomplished."); *City of Chattanooga v. Bellsouth Telecommunications, Inc.*, an unreported opinion of this Court filed in Knoxville on January 26, 2000.

The Trial Court in the present case found as follows regarding the objectives or purposes of the McMinn County Commission in enacting the ordinance:

> The record reflects two reasons for the imposition of the surcharge. First, the county sought to recover $122,745.79 which was its share in the construction of a water line around the Meadow Branch

---

[1] The Court in the *Memphis Retail Liquor Dealers* case held this general proposition inapplicable in an instance where "the license charge is imposed on those occupations which, while they are tolerated, are recognized as being hurtful to public morals, productive of disorder, or injurious to the public[.]" 547 S.W.2d at 246. No argument is made here that the solid waste industry is such an occupation that would fall within this exception.

Landfill after several contaminates were found in wells in the vicinity. The county also intended to put an additional water line in the vicinity. However, the state engineer would not certify, and the county does not urge, that defendant's landfill caused these problems. The second reason for the surcharge is the county's desire to recover the annual $277,000 shortfall in the operation of its own landfill. It is . . ."the county's intent that this fund (for its landfill) should not be supplemented by the tax rate but. . .from funds generated by solid waste activities." (County's Statement of Fact #12).

*         *         *

Upon being advised that a surcharge could not be imposed for any past or future water line, the county by Resolution 544 (Exhibit 2 to complaint) amended Resolution 533 to reduce the surcharge to $2.75 per ton. Again, there is nothing to connect the surcharge with any costs except for the shortfall at the county's own landfill. No costs are enumerated for any regulation of the Meadow Branch Landfill.

(Parentheses and ellipses in original).

The record contains the deposition of each of the ten members of the McMinn County Commission and that of the County Executive, Ron Banks. Mr. Banks testified that the services provided by the McMinn County landfill are paid for in part by tipping fees paid by users of the County landfill, and in part by tax dollars taken from the County's general fund. He stated that for the fiscal year beginning July 1, 2000, the tax expenditures from the general fund for the County landfill amounted to a total of $277,438.00.

Mr. Banks testified that he made the recommendation to the County Commission to impose the surcharge at the $4.00 per ton rate and the subsequently reduced $2.75 per ton rate. When asked how he determined the rates which he recommended, Mr. Banks stated that "I sat down and figured out. . .what it was going to take to replace some of the tax dollars that was in there [going to the McMinn County landfill]." Mr. Banks further testified as follows:

Q: Okay. So since you didn't know how much money you were going to bring in and you really didn't know how much money it was going to cost to do whatever these future plans were, your calculation was based upon trying simply to raise revenue.

A: Raise revenue. As I say, first of all, take care of the tax dollars that was [sic] going into our facility, you know, operation.

Q: Replace the tax dollars.

A: Replace the tax dollars, and number two, to upgrade services.

The depositions of the County Commissioners confirm that the primary purpose of the surcharge was to replace revenue from the County's general fund. Commissioner Rick Brown testified that the recommendation from Mr. Banks was based on "the replacement of the general fund monies that were going into the landfill budget." Commissioner James Gaston stated that there was no other plan in place to spend the revenue from the surcharge "other than replacing the monies spent on the water line and replacing the monies that typically go in through the general fund." Commissioner Bob Lamb stated that he did not remember any justification given for the surcharge "other than the fact that $2.75 allowed us to get the general fund money out of the landfill." Commissioner Wayne Shell stated that "when we cut it [the surcharge] to $2.75, that was the number that they g[a]ve us to offset the general fund money that we was [sic] taking out and putting into the operations of our landfill[.]"

The other McMinn County Commissioners made statements to similar effect in their depositions. The official minutes of the Commission meeting at which the surcharge was approved state that "[t]here was also a lengthy discussion concerning legislation that says the extra money must be used for landfill operation, but Mr. Banks added that this will free up some general fund monies for other purposes."

The Trial Court found that the County made no showing of any costs or expenditures incurred by it resulting from the operation of the privately-owned Meadow Branch landfill, stating as follows in relevant part:

> The county admits that the surcharge is not related to any direct expenditures associated with collection and disposal at E.T.C.'s landfill but is to be used exclusively for expenses associated with collection and disposal at its own landfill.
> *          *          *
> There is nothing in the record showing any cost to the county associated with E.T.C.'s collection or disposal activities; nor showing any cost associated with regulating the activity at E.T.C.'s landfill; nor showing any cost for providing a service or benefit to E.T.C. or its customers which the county is entitled to defray.

The record fully supports these findings. Mr. Banks' testimony suggests that any cost or responsibility of regulating the Meadow Branch landfill was at the state, not local, level:

> Q: But there was no effort made or investigation made to see what types of specific services they were providing at the Meadow Branch landfill.
>
> A: No, there was not. Those things are governed by the state regulations, as we were, and so, the only thing we had a problem with

was trying to let the people know that they were governed by the state regulations and not by us.

The Trial Court found one additional fact "of particular significance," which is undisputed:

> [T]hat after enacting the $2.75 per ton surcharge on all Class I solid waste facilities in McMinn County, the county then reduced its tipping fee to its customers at its landfill so that the real cost to them remained exactly the same as before the imposition of the surcharge.

Thus, due to McMinn County's offsetting reduction of its tipping fees, the result is that the only additional revenue raised by the surcharge comes from ETC and its Meadow Branch landfill customers. It is undisputed that neither ETC nor its customers are to receive any benefit from the surcharge monies, which, as the Trial Court found, are to be used only for expenditures related to the McMinn County landfill.

In the case of *Lamar Advertising of Tennessee, Inc. v. City of Knoxville*, an unreported opinion of this Court filed in Knoxville on April 11, 1997, we applied the following principle which is pertinent to the case at bar:

> Since a municipality incurs costs in discharging certain duties created by this type of ordinance, it is only reasonable to require those benefitting from the service to defray the costs commensurate with the expenses incurred by the municipality. *It is only required that the fees bear some reasonable relation to the expense involved* and it is no objection to a regulatory license that it produces more income than is required for its administration and enforcement.

(Emphasis added.) In *Lamar Advertising*, we held the City of Knoxville's sign inspection fee to be an invalid tax because it was not shown to bear a reasonable relation to the actual expenses involved with the sign inspections.

In the present case, Mr. Banks estimated that the $2.75 per ton surcharge would result in ETC being required to pay approximately $250,000 per year to McMinn County. Knox Horner, part owner of ETC, estimated the cost of the surcharge at $300,000 per year. As already noted, the County did not demonstrate that it has incurred any cost of regulating the Meadow Branch landfill. Under these circumstances, we find that the McMinn County ordinance imposing the surcharge is in fact an unauthorized and improper tax.

The Trial Court further found that the surcharge, as imposed, along with the County's decision to "absorb" the surcharge with respect to its own landfill, violated the Commerce Clause of the United States Constitution. In light of our holding affirming the Court's ruling that the

surcharge is an invalid tax, we do not find it necessary to reach this constitutional issue and it is pretermitted.

On appeal, ETC raises the issue, as stated in its brief, of whether the Trial Court erred in holding that T.C.A. 68-211-835(f)(1)(A) authorizes a surcharge applicable to a privately-owned landfill. The Trial Court reasoned and ruled as follows on this issue:

> E.T.C.'s argument that this section applies only to publicly owned landfills cannot be considered. It was applied to a private landfill in *County of Benton v. H & W Environmental Servs.*, [an unreported opinion of this Court filed in Jackson on December 2, 1998]. Also, two Attorney General Opinions have advised local governments that the section applies to privately owned landfills. See Op.Tenn.Atty.Gen. 00-053 (3/22/00); Op.Tenn.Atty.Gen. 99-088 (4/8/99).

We agree and affirm the Court's ruling that T.C.A. 68-211-835(f)(1)(A) authorizes a surcharge applicable to a privately-owned landfill under the appropriate circumstances.

For the foregoing reasons the judgment of the Trial Court is affirmed and the cause remanded for collection of costs below. Costs of appeal are adjudged against the Appellant, McMinn County.

_____
HOUSTON M. GODDARD, PRESIDING JUDGE